(No. 43712.—

(No. 43755.—

THE PEOPLE *ex rel.* Robert T. O'Connor, Appellant, *vs.* PETER BENSINGER *et al.,* Appellees.—THE PEOPLE *ex rel.* John C. Johns, Appellee, *vs.* PETER BENSINGER *et al.,* Appellants.

*Opinion filed May 21, 1971.*

WILLIAM H. THEIS and JAMES B. HADDAD, both of Chicago, for appellant ROBERT T. O'CONNOR and appellee JOHN C. JOHNS.

WILLIAM J. SCOTT, Attorney General, of Springfield, (JAMES B. ZAGEL and WARREN K. SMOOT, Assistant Attorneys General, of counsel,) for appellees and appellants Peter Bensinger *et al.*

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

These consolidated appeals raise the issue of the legal

effect of the release to Wisconsin of two Illinois prisoners in accordance with an agreement entered into by the Governors of Illinois and Wisconsin pursuant to the Uniform Criminal Extradition Act. (Ill. Rev. Stat. 1955, ch. 60, par. 18 *et seq.*) The agreement provided: "IT IS MUTUALLY AGREED, That in consideration of the return of said * * * fugitives to the State of Wisconsin * * * before the conclusion of their respective terms of imprisonment at the Illinois State Penitentiary * * *, the said fugitive or fugitives will be returned to the Illinois State Prison * * * immediately upon the completion of their respective trial or trials in case of acquittal, *or upon completion of his or their respective sentence or sentences in case of conviction,* provided that the authorities of the State of Illinois shall then desire the return of said fugitive or fugitives." (Emphasis supplied.)

The problem centers upon the italicized phrase. The facts are uncontroverted. Robert T. O'Connor was convicted of armed robbery in the circuit court of Cook County and sentenced on June 23, 1955, to not less than five nor more than fifteen years imprisonment. John C. Johns was convicted of armed robbery in the circuit court of Rock Island County on August 5, 1955, and sentenced to not less than one nor more than six years imprisonment.

O'Connor and Johns were serving those sentences in November of 1955 when the Governor of Wisconsin sought their return to that State to face charges of murder and armed robbery. An extradition hearing was held, and on November 23, 1955, they were returned to Wisconsin.

At their joint trial in Wisconsin, O'Connor and Johns were found guilty on both charges, sentenced and immediately incarcerated in the Wisconsin State peniteniary. Approximately 15 years later, in June of 1970, the two men were paroled by Wisconsin authorities and were returned to the Illinois State penitentiary where they are being held to serve the time remaining on their 1955 Illinois sentences.

Upon their return to Illinois, both O'Connor and Johns (petitioners) filed petitions for writs of *habeas corpus*: O'Connor in the circuit court of Cook County, and Johns in the circuit court of Rock Island County. On September 14, 1970, the circuit court of Rock Island County granted John's petition for *habeas corpus* and ordered his immediate and unconditional release; the following day, the circuit court of Cook County denied O'Connor's petition. O'Connor has appealed from the dismissal of his petition, and the State has appealed from the award of the writ to Johns. On the State's motion, these appeals were consolidated.

The petitioners argue that when the Governor of Illinois returned them to Wisconsin to stand trial, and did not clearly and absolutely provide for their return immediately after trial, he commuted their sentences to the period of time served before extradition. Alternatively, the petitioners contend that the Governor may not use the extradition process to toll the running of a judicially imposed sentence, and that they therefore are entitled to credit toward their Illinois sentences for the time served in the Wisconsin State penitentiary. Under either theory, the petitioners are entitled to their immediate release.

The leading case is *People ex rel. Barrett* v. *Bartley,* 383 Ill. 437, decided in 1943. Hugh McLaughlin had been sentenced on October 18, 1934, to a term of not less than one nor more than 20 years imprisonment for forgery. On May 15, 1936, the Governor of Illinois honored a requisition from the Governor of Wisconsin, and issued an extradition warrant authorizing McLaughlin's return to Wisconsin. He was delivered to Wisconsin authorities, and was subsequently tried there, convicted and incarcerated in a Wisconsin State prison. That sentence was terminated on September 27, 1937. At that time no detainer was on file for his return to Illinois, and he left Wisconsin and went to Ohio.

In April of 1938 he was convicted and sentenced to not less than one nor more than three years imprisonment in

the Ohio State penitentiary. He was released by Ohio authorities in June of 1940, and he returned to Illinois pursuant to a detainer which had been filed by the Illinois parole authorities while he was incarcerated in Ohio.

On review of the issuance of a writ of *habeas corpus* which discharged McLaughlin from the Illinois penitentiary, this court stated that the central question presented was: "What was the legal effect of the act of the Governor in taking McLaughlin out of the penitentiary on a fugitive warrant and delivering him to the State of Wisconsin, without any reservations, and at a time when he was actually serving a term of imprisonment under the sentence and judgment of the circuit court * * *." 383 Ill. at 442.

The State argued that in returning McLaughlin to Wisconsin the Governor waived only temporarily the completion of his sentence in Illinois, and that he could properly be required to complete the unserved portion of his sentence. After reviewing the pertinent decisions the court rejected that argument, saying: "The legal effect and logic of these cases convince us that the waiver of jurisdiction of a State over a fugitive is the prerogative of the Governor, and that his extradition warrant takes priority over all State process by which the fugitive is held; that *a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction and service of a new sentence, before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights.* We believe the action of the Governor in the exercise of his constitutional powers in extraditing [McLaughlin] while he was in the service of a sentence * * *, operated to waive any further jurisdiction over the person of the prisoner and that the circuit court * * * correctly granted the writ in the *habeas corpus* proceeding * * *." (Emphasis supplied.) 383 Ill. at 446-7.

Shortly before the petitioners in the present case were

released to Wisconsin, the legislature had adopted the Uniform Extradition Act, which became effective on July 14, 1955. (Ill. Rev. Stat. 1955, ch. 60, par. 18 *et seq.*) Section 5 of that Act provides:

"When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this State may agree with the Executive Authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this State as soon as the prosecution in this State is terminated.

"The Governor of this State may also surrender on demand of the Executive Authority of any other state any person in this State who is charged  *  *  *  with having violated the laws of the state whose Executive Authority is making the demand, even though such person left the demanding state involuntarily." (Ill. Rev. Stat. 1969, ch. 60, par. 22.) Wisconsin had adopted this same provision in 1939. Wis. Stat. Ann. (1970), sec. 976.03(5).

The State focuses upon the second paragraph of section 5, and argues that the statute does not prohibit the Governor from releasing an Illinois prisoner for service of sentence in another State, as well as for trial there. It asserts that the provision in the first paragraph, which refers specifically to the return of an extradited prisoner as soon as prosecution is terminated, "sounds of politeness rather than mutual requisite." But this argument overlooks the fact that the Wisconsin statute has an identical first paragraph, and that the release of an Illinois prisoner to Wisconsin must be read in the light of the obligations assumed by that State under the Uniform Act. It also disregards the stated purpose of the Commissioners on Uniform Laws in drafting section 5: "Section 5 contains two paragraphs,

added by the Conference in 1936. The second of these paragraphs authorizes the extradition of a criminal who, under the decisions of some states, has been held not to be a 'fugitive' because his departure from the state in which the crime was committed was under compulsory process. The first paragraph is intended to cover the situation of a man who is wanted for trial in one state and who is already serving a prison sentence in another state." 9 Uniform Laws Anno., p. 261.

In our opinion, section 5 of the statute does not empower the Governor of this State to release a sentenced prisoner to a demanding State for purposes of trial, conviction and service of a new sentence. Rather, that section empowers the Governor to release a sentenced prisoner solely for purposes of standing trial in the demanding state. The extradited prisoner must be returned immediately after his trial. Any other construction of this section would, in light of *People ex rel. Barrett* v. *Bartley* (see also, *Shields* v. *Beto* (5th cir. 1967), 370 F.2d 1003), raise serious constitutional questions.

The State argues also that section 27 of the statute negates this aspect of the opinion in *Barrett*. That section provides: "Nothing in this Act contained shall be deemed to constitute a waiver by this State of its right, power or privilege to try such demanded person for crime committed within this State, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this State, nor shall any proceedings had under this Act which result in, or fail to result in, extradition be deemed a waiver by this State of any of its rights, privileges or jurisdiction in any way whatsoever." (Ill. Rev. Stat. 1969, ch. 60, par. 44.) The non-waiver of jurisdiction aspect of section 27, in our opinion, is operative only if there is compliance with the other provisions of the Act. Here, however, the Governor did not

comply with section 5 of the Act when he released the petitioners to Wisconsin.

Accordingly, the judgment of the circuit court of Cook County denying petitioner O'Connor a writ of *habeas corpus* is reversed, and the petitioner is ordered discharged. The judgment of the circuit court of Rock Island County awarding petitioner Johns a writ of *habeas corpus* is affirmed.

*No. 43712, Judgment reversed; petitioner discharged.*

*No. 43755, Judgment affirmed.*