## No. 25750

## Arthur Jerome Watson v. Roy W. Enslow, Sheriff, Fremont County, Colorado
### (517 P.2d 1346)

Decided January 14, 1974.　　　　Rehearing denied February 4, 1974.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Lee Belstock, Deputy, for petitioner-appellant.

John P. Moore, Attorney General, John E. Bush, Deputy, Tennyson W. Grebenar, Assistant, Donna A. Maranchik, Assistant, for respondent-appellee.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from the denial of petitioner Watson's request for habeas corpus, C.R.S. 1963, 60-1-10.

The matter arises because of an extradition request by the State of California. The facts are as follows: Petitioner Watson was serving a California prison sentence in 1957. He escaped to Colorado and was involved in a murder. He returned to California before being apprehended by Colorado authorities and was reincarcerated in the California prison. In late 1957, petitioner was extradited to Colorado from California to stand trial for the murder charge. That extradition was accomplished through an executive agreement between the Governors of California and Colorado. The agreement provided in pertinent part:

"IT IS HEREBY AGREED by the undersigned, Governor of the State of Colorado, that *in the event said Arthur Jerome Watson * * * shall be acquitted or shall receive a sentence of less than death following a trial in the courts of the State of Colorado,* or the prosecution in the State of Colorado is otherwise terminated, said Arthur Jerome Watson * * * *will be returned to the State of California* at the expense of the State of Colorado, and that the Governor, or other acting executive authority of this state, *will upon demand of the*

*executive authority of the State of California surrender* said Arthur Jerome Watson * * * to the duly authorized agents of the State of California." (Emphasis added.)

Upon the completion of his extradition to Colorado, petitioner was tried on a charge of first-degree murder. He was convicted. We reversed that conviction and remanded the case for retrial. *Kostal v. People,* 144 Colo. 505, 357 P.2d 70 (1960). On retrial, petitioner was again convicted and sentenced to life imprisonment. We affirmed. *Watson v. People,* 155 Colo. 357, 394 P.2d 737 (1964). This sentence of "straight life" was subsequently commuted to 23 years to life and parole was granted in 1972. Petitioner's parole was abruptly interrupted by an extradition request from California. It was filed more than eight years after petitioner's Colorado appellate proceedings were terminated, and alleged that petitioner was a fugitive from justice in California whose return was mandated by § 2 of the Uniform Criminal Extradition Act, C.R.S. 1963, 60-1-2. The Governor of this state issued a warrant for petitioner's arrest, C.R.S. 1963, 60-1-7, and petitioner was taken into custody by the respondent, Sheriff of Fremont County. Petitioner sought habeas corpus relief, C.R.S. 1963, 60-1-10, in the district court. It was denied after a full hearing and petitioner appealed to this court. We reverse the district court, make the writ absolute and order that petitioner be discharged.

I.

At the outset, it is important to note that, despite the fact that California's request for extradition invokes § 2 of the Uniform Criminal Extradition Act, C.R.S. 1963, 60-1-2, this case involves an executive agreement between two states, and is therefore controlled by § 5 of the Uniform Criminal Extradition Act, C.R.S. 1963, 60-1-5. Section 5 was specifically designed to deal with the problem of extraditing and returning those prisoners who are already in the custody of the authorities of another state by reason of imprisonment or awaiting trial. Commissioner's Note, § 5 *Uniform Criminal Extradition Act,* 9 U.L.A. 296 (1957); *cf. In Re Whittington,* 34 Cal. App. 344, 167 P. 404 (1917). We note further that

we limit our opinion in this case to an interpretation of the authority of our executive under our statutes, and intimate no view regarding the scope of the authority of the executive of our sister state of California.

## II.

■ Petitioner's removal from California as well as his present extradition to California from this state are governed by § 5 of the Uniform Criminal Extradition Act, C.R.S. 1963, 60-1-5:

"*Extradition of persons imprisoned or awaiting trial.* — (1) When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, *the governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.*

"(2) The governor of this state may also *surrender on demand* of the executive authority of any other state any person in this state who is charged in the manner provided in section 60-1-23 with having violated the laws of the state whose executive authority is making the demand, even though such person left the demanding state involuntarily." (Emphasis added.)

The executive agreement which brought petitioner to Colorado in the first instance was authorized by the quoted section of the statute. That agreement, of course, set forth the course of conduct for both parties. The statute, however, sets forth the course of conduct which the Colorado governor must follow. As we view this statute and its predecessor, C.R.S. '53, 60-1-5, which was identical in every respect, it is both a grant and limitation of executive authority. The governor of this State was authorized to enter into the executive agreement with California for the return of petitioner Watson, C.R.S. 1963, 60-1-5(1). His surrender

could be made to that state, *id.* (2). This grant of authority is addressed to the governor's discretion, for it is couched in language which is permissive not mandatory. *Thompson v. Bannan,* 298 F.2d 611 (6th Cir. 1962). Once having exercised that discretion, however, the power and duties of the Colorado executive are governed by the terms of the statute. As is evident from a reading of the statute, the power of the governor to make surrender and return is limited by that portion of the statute which reads: "upon condition that such person be returned to such other state * * * as soon as the prosecution in this state is terminated."

As the recitation of the facts reveals, the surrender to the executive in California which the statute contemplates was not made at the time petitioner's Colorado proceedings were terminated, *Watson v. People,* 155 Colo. 357, 394 P.2d 737 (1964), but rather, eight years after that time. We are presented, therefore, with the narrow issue of whether, where an executive agreement based on C.R.S. 1963, 60-1-5 has been made, the failure to return Watson according to the terms of the statute limits the authority of our executive to make surrender at a later date. We answer the question in the affirmative.

### III.

The question presented by petitioner is a novel one. The cases cited by the People in their brief rebut the doctrine of waiver as applied to the situation here. The only applicable case which the petitioner cites holds that, when the governor of the state of origin does not make timely demand, that state has waived its jurisdiction. *People ex rel. O'Connor v. Bensinger,* 48 Ill.2d 440, 270 N.E.2d 1 (1971). These cases are of little assistance. As we view this issue, the controlling principles apply only to the acts of the Colorado governor, and not to the question of jurisdiction or waiver of the State of California.

### IV.

The legislative history of the clause requiring that return be made "as soon as the prosecution in this state is terminated" provides no guidance on the meaning and

purposes of the clause, *Uniform Criminal Extradition Act* § 5, 9 U.L.A. 295-96 (1957). Nevertheless, we are called upon to decide the issue.

As we view the section under scrutiny, it is meant to serve several purposes for both the interests of the government and the constitutional rights of the defendant. Firstly, the provision placing the expense on Colorado of returning the prisoner to the state from which he has been taken is in lieu of the savings in cost for the prisoner's retention in this state and guarantees that these costs are kept to a minimum. This is an affirmative duty that the legislature has imposed in the executive. See also C.R.S. 1963, 60-1-12. Secondly, the clause is clearly intended to provide a standard to the state of origin, informing that state as to the proper time for demand. The statute also makes it obvious that the executive could not make return before the prosecution proceedings are terminated. Thirdly, therefore, the clause gives the governor of Colorado a standard for determining when a demand for return is both timely and proper. *Cf.* C.R.S. 1963, 60-1-4. These are the governmental interests which are furthered by the statute.

The protection of prisoner interests is discernible from the holdings of some federal courts as well as a common sense consideration of the impact of "passing around" prisoners from one jurisdiction to another, *e.g., Shields v. Beto,* 370 F.2d 1003 (5th Cir. 1967). Prisoners who have been extradited from states where they are already imprisoned incur an interruption of the service of their sentences. As the court said in *White v. Pearlman,* 42 F.2d 788 (10th Cir. 1930), such prisoner should not be required to serve his sentence piece-meal. His return as speedily as the completion of proceedings will permit, on the other hand, may be necessary to enable him to pursue any post-conviction remedies which were interrupted or suspended by his extradition to this state. Then again, he may be able to secure credit from Colorado for the time he serves in the prison system of the state of origin. *See Alire v. People,* 171 Colo. 228, 466 P.2d 78 (1970).

On the facts revealed by petitioner's counsel — not disputed by the People — the effect of the failure to return this petitioner to California when his Colorado proceedings were terminated illustrates how disregard for the mandate of this section can have serious consequences. Petitioner's appeal of his California conviction on which he was being held was dismissed for failure to pursue it to completion. Also, while Colorado would perhaps be willing to give this petitioner credit against his Colorado sentence for the time he would have served in California had he been promptly returned (*See Alire v. People, supra*), California does not allow credit for the eight years he has served in this state. *In Re Gullatt,* 69 Cal.2d 395, 445 P.2d 292, 71 Cal. Rptr. 676 (1968).

The legal authority of Colorado's governor to make the requested surrender and return at this late date is beyond the authority provided both in the statute and the agreement. The arrest warrant being without the governor's authority, it follows that the respondent, Sheriff of Fremont County, has no legal authority to hold petitioner.

The judgment of the district court is reversed. The cause is remanded to said court to make the writ of habeas corpus absolute and to release the petitioner.

MR. CHIEF JUSTICE PRINGLE does not participate.