**No. 26591**

### Sam Buffalo v. C. Winston Tanksley, Warden, Colorado State Reformatory

(536 P.2d 827)

Decided June 16, 1975.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, O. Edward Schlatter, Deputy, for petitioner-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, John Stephen Phillips, Assistant, for respondent-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The sufficiency of extradition documents is the central issue in this habeas corpus proceeding. Arizona seeks extradition of Sam Buffalo to answer charges of rape and the commission of lewd and lascivious acts. We affirm the order which directs that the defendant be extradited.

On December 18, 1972, Sam Buffalo, while confined in the Colorado State Reformatory, was notified that a detainer had been lodged against him by the Arizona authorities. He acknowledged notice of the detainer on a form supplied by the reformatory but did not request a speedy trial or resolution of the charges, although he was informed of his right to make such a demand. 1969 Perm. Supp., C.R.S. 1963, 39-23-1.[1]

In May 1973, Buffalo was granted parole subject to the detainer. However, he could not take advantage of the parole unless he waived extradition and consented to be tried in Arizona. When Buffalo refused to waive extradition, Arizona submitted requisition documents to the Governor of Colorado. On September 21, 1973, a governor's warrant was issued, and shortly thereafter the parole board reaffirmed its previous order granting conditional parole (parole subject to the detainer). Subsequently, the defendant was arrested pursuant to the governor's warrant, and two habeas corpus petitions were filed by the defendant. The trial court consolidated the petitions and issued a writ of habeas corpus. Following a hearing, the trial judge discharged the writ.

The sufficiency of the extradition documents depends upon our answer to two questions. First, did the Governor of Colorado have statutory authority to issue the warrant and to order extradition? Second, is Buffalo's claim that the governor's warrant is null and void because of patent conflicts in the requisition documents valid? In our view, the governor had the authority to order extradition, and the extradition documents are not defective.

---

[1] Now section 16-14-102(1), C.R.S. 1973.

I.
## The Governor's Authority

The defendant contends that Arizona's demand for extradition is based, at least in part, on an executive agreement and is, therefore, controlled by the Uniform Criminal Extradition Act which provides the analytical framework for the resolution of the issues which are before us. C.R.S. 1963, 60-1-5.[2] He contends that section 5 does not grant the Governor of Colorado the power or authority to issue a warrant for the arrest of a fugitive from justice when the demanding state fails to seek extradition with sufficient speed and promptness. In order to uphold Buffalo's contention, we would be forced to ignore the express statutory language contained in the Uniform Criminal Extradition Act. In relevant part, C.R.S. 1963, 60-1-5(1)[3] provides:

"*60-1-5. Extradition of persons imprisoned or awaiting trial.* (1) When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of the other state for the extradition of that person before the conclusion of such proceedings or his term of sentence in the other state, upon condition that such person be returned to the other state at the expense of this state as soon as the prosecution in this state is terminated."

The section in issue is directed to Colorado's authority to extradite a person who is imprisoned in another state and does not apply to the facts in this case. Here, Arizona seeks to extradite Buffalo from Colorado to stand trial in Arizona. *Watson v. Enslow*, 183 Colo. 435, 517 P.2d 1346 (1974), is, therefore, not in point. In *Watson v. Enslow, supra,* the issue was limited to an interpretation of a part of C.R.S. 1963, 60-1-5[4] and the legal effect of an executive agreement on California's demand for the extradition of Watson. Watson, who had been sentenced to life imprisonment in Colorado, was granted a commutation of his sentence, and when he was paroled, California endeavored to extradite him to compel him to complete service of a California sentence. The narrow issue, which was tied to the executive agreement in that case, was whether the Governor of Colorado acted within statutorily prescribed time limits in ordering Watson's return to California.

There, we were confronted with the fact that Watson had been returned to Colorado by California for the purpose of trial and had not been speedily returned to California, as required by the executive agreement, after he was tried, convicted, and committed to the Colorado State Penitentiary to serve a life sentence. The failure of the Colorado Governor to

---

[2]Now section 16-19-106, C.R.S. 1973.
[3]Now section 16-19-106(1), C.R.S. 1973.
[4]Now section 16-19-106, C.R.S. 1973.

order Watson's prompt return to California after the trial was completed, as required by the executive agreement, was deemed by us to be fatal to the authority of the Governor of Colorado to order the return of Watson. *See People ex rel. O'Connor v. Bensinger*, 48 Ill.2d 440, 270 N.E.2d 1 (1971).

Essentially, Buffalo contends that the failure of the Arizona authorities to forward requisition documents to Colorado promptly for the purpose of extradition denied him the right to a speedy trial. *U. S. Const.* amend. VI. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *ABA Standards for Criminal Justice, Speedy Trial*, §3.1.

However meritorious Buffalo's constitutional claims may be, when the issue centers on extradition in a habeas corpus proceeding, the question must be resolved by the courts of Arizona and not by the courts of Colorado. The constitutional issues are for the Arizona courts when the defendant is returned to stand trial. *Rush v. Baker*, 188 Colo. 136, 533 P.2d 36 (1975); *White v. Leach*, 188 Colo. 62, 532 P.2d 740 (1975); *Bryan v. Conn*, 187 Colo. 275, 530 P.2d 1274 (1975); *Denton v. Cronin*, 187 Colo. 247, 529 P.2d 644 (1975). *See Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

The discretion to extradite under the facts of this case was with the Governor of Colorado. C.R.S. 1963, 60-1-2[5] and C.R.S. 1963, 60-1-19.[6] C.R.S. 1963, 60-1-2 provides that the gubernatorial duty to render a fugitive from justice must be viewed "subject to the provisions of this article." Therefore, the duty to extradite must be viewed in the light of C.R.S. 1963, 60-1-19, which provides:

"*60-1-19. Persons under prosecution when demanded.* If a criminal prosecution has been instituted against a person under the laws of this state and is still pending, the governor, in his discretion, subject to such criminal prosecution, either may surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state."

Buffalo was in the legal custody of Colorado, and the Governor of Colorado had the authority to postpone extradition until he had completed his sentence but could, in his discretion, order extradition. *Accord, Application of Kostal*, 151 Cal.App.2d 739, 312 P.2d 280 (1957); *In re Murphy*, 321 Mass. 206, 72 N.E.2d 413 (1947); *Koch v. O'Brien*, 101 N.H. 11, 131 A.2d 63 (1957); *Application of Caudill*, 352 P.2d 926 (Okla.Crim.App.1960); *Commonwealth ex rel. Houser v. Seip*, 385 Pa. 545, 124 A.2d 110 (1957).

## II.
### The Validity of the Governor's Warrant

---

[5]Now section 16-19-103, C.R.S. 1973. .
[6]Now section 16-19-120, C.R.S. 1973.

■ Buffalo also contends that the Colorado governor's warrant should not be honored because the extradition documents are insufficient, contain patent ambiguities, and are facially inconsistent. He asserts that the failure of Arizona, the demanding state, to specifically delineate the basis for extradition deprives the extradition documents of any validity. He points out that the requisition documents contain both a demand for extradition, pursuant to C.R.S. 1963, 60-1-2,[7] and a request for extradition predicated on C.R.S. 1963, 60-1-5,[8] which controls executive agreements. He relies on broad general statements to the effect that extradition should not be ordered unless the appropriate sections of the Uniform Criminal Extradition Act are followed. *See Layher v. Van Cleave*, 171 Colo. 465, 468 P.2d 32 (1970); *Matthews v. People*, 136 Colo. 102, 314 P.2d 906 (1957); *McKnight v. Forsyth*, 129 Colo. 64, 266 P.2d 770 (1954).

As we view the record, Arizona's demand for extradition complies with the controlling section of the Uniform Criminal Extradition Act. C.R.S. 1963, 60-1-3. [9] The executive agreement, which accompanied the requisition documents, served only to ensure that Arizona would return and surrender Buffalo to the Colorado authorities upon the completion of the trial in Arizona. The two documents are directed toward different responsibilities which are imposed upon the Governors of Arizona and Colorado and relate to distinct phases of the extradition process.

Accordingly, we affirm the trial court and sustain the order directing that the defendant Sam Buffalo be extradited to Arizona to stand trial.

MR. CHIEF JUSTICE PRINGLE does not participate.

■

---

[7]Now section 16-19-103, C.R.S. 1973.
[8]Now section 16-19-106, C.R.S. 1973.
[9]Now section 16-19-104, C.R.S. 1973.