Arnold CARTER, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, Knoxville.

April 10, 1980.

Permission to Appeal Denied by Supreme Court May 19, 1980.

Arnold Carter, pro se.

William M. Leech, Jr., Atty. Gen. of Tenn., James A. DeLanis, Asst. Atty. Gen. of Tenn., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

DUNCAN, Judge.

The appellant, Arnold Carter, brings this appeal contesting the trial court's dismissal, without an evidentiary hearing, of his petition for post-conviction relief.

In January 1972, the appellant was convicted of robbery in the state of Kentucky and received a life sentence. While serving this sentence, he was indicted for murder and robbery in Monroe County, Tennessee. Thereafter, the Governor of Tennessee and the Governor of Kentucky entered into an executive agreement, the pertinent part of which is as follows:

> NOW THEREFORE, pursuant to the criminal extradition laws of Tennessee and Kentucky, respectively,
>
> IT IS MUTUALLY AGREED, that in consideration of the return of said fugitives [1] to the State of Tennessee, as aforesaid before the conclusion of their terms of imprisonment in the Kentucky State Penitentiary, Lyon County, Eddyville, Kentucky, that the said fugitives will be returned to said prison at the expense of the State of Tennessee *as soon as the aforesaid prosecution in the State of Tennessee is terminated.* (emphasis added).

The appellant was convicted in Tennessee of murder in the first degree and received a sentence of death.[2] However, instead of being returned to the state of Kentucky immediately after his trial in Tennessee, the appellant was taken to the Tennessee State Penitentiary where he remained for a period of forty-one days.[3] Tennessee officials then apparently discovered their error and an executive order was issued returning the appellant to Kentucky.

The appellant's complaints are predicated upon the fact that he was not returned to Kentucky immediately after his trial, but rather was placed in the Tennessee penitentiary where he remained for forty-one days before being returned to Kentucky.

The appellant's trial was completed on May 10, 1972, at which time judgment was imposed. He was transferred to the peni-

---

1. The *agreement* also concerned Danny Barnes, an original co-defendant of the appellant.

2. Appellant's death sentence was later commuted to 99 years.

3. The appellant has been given credit on his sentence for the 41 days spent in the state penitentiary.

tentiary the next day and was returned to Kentucky on June 21, 1972.

■ In order to aid us in evaluating the appellant's complaints, we have reviewed the record of the appellant's direct appeal of his original conviction. His conviction was affirmed by our Court on May 9, 1973. *Arnold Carter, et al. v. State of Tennessee,* unpublished, Tenn.Crim.App.—Knoxville. Comparing the information contained in that record with the information in the present record, we find that contrary to the appellant's insistence, he was timely returned to Kentucky. His original appeal record shows that after his conviction, his motion for a new trial was filed on June 7, 1972, and was overruled by the trial court on September 15, 1972. Thus, at the very least, from a legal standpoint the prosecution of the appellant's case did not terminate within the meaning of the executive agreement until the trial court overruled his motion for a new trial on September 15, 1972, and until that time, Tennessee could have detained the appellant without violating the executive agreement. At any rate, by the time his motion for a new trial was ruled on, the appellant had already been returned to Kentucky; therefore, his effort to predicate his complaints on an untimely return to Kentucky must fail.

Moreover, even assuming *arguendo* that the appellant was not timely returned to Kentucky, we find that his complaints are without merit.

■ First, the appellant asserts that Tennessee did not have proper jurisdiction over him and thus his Tennessee conviction is void. Apparently, it is the appellant's theory that the failure of Tennessee to immediately return him to Kentucky after trial somehow operated to retroactively deprive the Tennessee court of jurisdiction. We disagree. Appellant cites no authority in support of his theory, nor are we able to find any authority to support it. Rather, it is our opinion that the Tennessee court properly had jurisdiction at the inception of

its proceedings, and the subsequent detention of the appellant in the state penitentiary did not operate retroactively to deprive the court of jurisdiction.

■ Next, the appellant contends that his return to Kentucky by Tennessee authorities operates as an implied pardon or commutation of his Tennessee sentence. The appellant relies primarily on *Watson v. Enslow,* 183 Colo. 435, 517 P.2d 1346 (1974).

In *Watson* the prisoner was extradited from California, where he was serving a prison sentence, to Colorado pursuant to an executive agreement between the states' governors. The prisoner was convicted in Colorado, served eight years of his sentence there, and was placed on parole. At that time, the governor of Colorado attempted to return the prisoner to California. The court, in construing section 5 of the Uniform Criminal Extradition Act,[4] held that the failure to order the prisoner's prompt return to California after his Colorado conviction, as required by the executive agreement, was deemed fatal to the authority of the governor to order the prisoner's return after he had served eight years of his Colorado sentence and had been granted parole. However, *Watson* differs from the present case. In *Watson,* the precise issue was whether the governor of Colorado had the authority to return the prisoner to California. In the present case, the issue is not whether the governor of Tennessee had the authority to return the appellant to Kentucky, but whether the appellant's return to Kentucky operated as an implied pardon of his Tennessee sentence.

The appellant cites several cases indicating that the surrender of a prisoner to another state while the prisoner is serving a sentence is equivalent to an implied pardon, waiver, or commutation of sentence. *Shields v. Beto,* 370 F.2d 1003 (5th Cir. 1967); *Thompson v. Bannan,* 298 F.2d 611 (6th Cir. 1962); *Davis v. Harris,* 355 S.W.2d 147 (Ky.App.1962).

---

4. Tennessee is a party state to the Uniform Criminal Extradition Act. Section 5 which was construed in *Watson,* is found in T.C.A. § 40–1023.

After considering the cases cited by the appellant, we are of the opinion that those cases differ significantly with the present case either on their facts or on the precise issue decided by the respective courts, so as to make them inapplicable to the present case. The *Shields* case turned on failure of the sovereign to take interest in the return of the prisoner; the *Thompson* case in fact found no waiver of jurisdiction (although we note that in that case the sentence had not been imposed); the *Davis* case turned on whether local authorities had the discretion to release a prisoner to another jurisdiction, absent statutory authority.

We call attention to another line of cases which hold that the mere surrender of a prisoner to another jurisdiction does not imply a pardon, waiver, or commutation of sentence. *Stroble v. Egeler*, 547 F.2d 339 (6th Cir. 1977); *Gaches v. Third Judicial District*, 416 F.Supp. 767 (W.D.Okl.1976); *In re Patterson*, 64 Cal.2d 357, 49 Cal.Rptr. 801, 411 P.2d 897 (1966); *Armpriester v. Grimes*, 215 Ga. 429, 111 S.E.2d 34 (1959); *Bartlett v. Lowry*, 181 Ga. 526, 182 S.E. 850 (1935); *Riddall v. Cupp*, 13 Or.App. 284, 508 P.2d 457 (1973); *Bishop v. Cupp*, 7 Or.App. 349, 490 P.2d 524 (1971).

A general view expressed in most of these cases cited above is that a waiver or pardon will not be implied unless there is affirmative evidence in the record demonstrating such.[5] There is nothing in the present record to show any intentional waiver or abandonment of interest in the appellant by the Tennessee authorities. In fact, the record affirmatively shows the contrary.

The case of *Stroble v. Egeler, supra*, is closely analogous to the present case. In *Stroble*, the defendant who was serving a sentence in New York was temporarily brought to Michigan, pursuant to the Inter-state Compact on Detainers[6] where he was tried, convicted, and sentenced. Through inadvertence, the defendant started serving his Michigan sentence in Michigan, but was shortly thereafter returned to New York. The defendant, who was later brought back to Michigan to serve his sentence on his Michigan conviction, filed a writ of habeas corpus alleging that Michigan had waived its right to imprison the appellant because of his earlier temporary inadvertent incarceration by Michigan prior to his return to New York. In addressing this contention, the Sixth Circuit said:

> It is concluded that appellant's contention that Michigan waived its right to imprison the appellant on the murder conviction when its authorities returned him to New York after he had begun serving the life sentence in Michigan through administrative mistake is without merit. 547 F.2d at 340.

Thus, after considering the cases cited by both the appellant and the State, we have concluded that Tennessee did not impliedly pardon or commute the appellant's sentence by returning him to Kentucky.

■ We would also emphasize here that relief is available under the Post Conviction Procedure Act only when the conviction or sentence is void or voidable because of the abridgement of a federal or state constitutional right. *Gant v. State*, 507 S.W.2d 133 (Tenn.Cr.App.1973); T.C.A. § 40–3805. From our review of this record, we find that the appellant has suffered no constitutional deprivations.

Lastly, the appellant contends that he should have been granted an evidentiary hearing on his petition.

■ An evidentiary hearing upon a post conviction petition is required only when it

---

5. The state of Tennessee has indicated in T.C.A. § 40–1035 its disapproval of implied waivers and pardons. This statute, part of Tennessee's *Uniform Criminal Extradition Act*, states that nothing in the Act shall be deemed to waive the right of the State to regain custody of defendant for trial, sentence or punishment.

6. Both the Interstate Compact on Detainers and the Uniform Criminal Extradition Act provide for a prompt return of the prisoner to the sending state, with the former providing that the prisoner shall be returned "at the earliest practicable time" and the latter providing for return "as soon as the prosecution . . . is terminated." T.C.A. §§ 40–3901, –1023.

alleges facts which, if true, would render the petitioner's conviction constitutionally void. *Gant v. State, supra.*

We find that the trial court properly dismissed the appellant's petition without an evidentiary hearing because no facts could have been developed at that hearing over and above the facts that are present in this record. The facts necessary for a resolution of the appellant's complaints are amply stated in this record. Assuming the truth of all of the appellant's allegations, no abridgement of any of his constitutional rights is shown.

The judgment of the trial court is affirmed.

O'BRIEN and SCOTT, JJ., concur.