John J. JOUBERT, IV,

v.

**John R. McKERNAN, Jr., Governor of the State of Maine, and Donald Allen, Commissioner of the Department of Corrections \*.**

Supreme Judicial Court of Maine.

Argued March 22, 1991.
Decided April 4, 1991.

---

\* For convenience we refer to the defendants in this opinion as the State of Maine.

Stuart W. Tisdale, Jr. (orally), Poulos, Campbell & Zendzian, Portland, for plaintiff.

Michael E. Carpenter, Atty. Gen. William R. Stokes (orally), Lisa Pelkey Marchese, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

John J. Joubert, IV, appeals from a judgment of the Superior Court (Knox County, *Kravchuk, J.*) denying the multiple requests contained in his *pro se* "Petition for a Writ of Habeas Corpus" that, in addition to a writ of habeas corpus, sought both a declaration that his anticipated return to Nebraska within ten days of sentencing was contrary to law and an injunction against returning him to Nebraska. Because we find no substantive merit in Joubert's contentions, we affirm the judgment.

On January 8, 1986, Joubert was indicted by a Cumberland County grand jury for the murder of Richard Stetson. At the time of the indictment, Joubert was incarcerated on death row at the Nebraska State Penitentiary for the killing of two boys in 1983. Following extended discussions between the executive branches of the States of Maine and Nebraska and a request by Joubert that the charge pending in Maine be set for final disposition pursuant to the Interstate Compact on Detainers, an Executive Agreement for Temporary Custody was signed by the Governors of Nebraska and Maine. This executive agreement authorized, among other things, that Nebraska would grant Maine "temporary custody" of Joubert.

In accordance with the Uniform Criminal Extradition Act as adopted in both states, the agreement first mandated that Joubert be taken before a court in Nebraska to be informed of Maine's demand for his surrender, the crime with which he was charged, and his rights to counsel, to contest the extradition and to a reasonable time to apply for a writ of habeas corpus. The agreement further guaranteed:

7. That at all times hereinafter and so long as said Joubert is in the custody of Maine authorities, Maine shall at their cost appear for the State of Nebraska and resist any action which would interfere with or delay the prompt return of Joubert to Nebraska upon completion of the trial and sentencing herein contemplated.

8. That at all times hereinafter and so long as said Joubert is in custody of Maine authorities, Maine shall return Joubert to the State of Nebraska promptly upon completion, with no further extradition proceedings necessary, and no later than ten days after completion of the anticipated trial and sentencing or upon termination of the pending proceedings in any manner other than by imposition of sentence.

12. That at all times hereinafter Nebraska has a prevailing right to the custody of Joubert subject only to the trial and sentencing of Joubert concerning Cumberland County Docket Number 86–105.

Joubert was brought before a court in Lancaster County, Nebraska on January 9, 1990, and informed of his rights. Joubert informed the court that he would not file for a writ of habeas corpus and that he was "freely, voluntarily and intelligently" waiving extradition. Joubert's attorney, however, objected to the attempt by the attorney representing the State of Nebraska to offer in evidence documents supporting lawful custody of Joubert in the State of Nebraska and a photocopy of the Executive Agreement on the ground that the exhibits were irrelevant to the issues that related to whether he was going to waive extradition on the governor's warrant. The court overruled the objection and admitted the

exhibits. Joubert's attorney also took exception to a statement by the State of Nebraska's counsel that the hearing was set on the motion to transfer custody pursuant to the executive agreement between the governors and a request for extradition and not under the Interstate Compact on Detainers. According to Joubert's attorney, this statement threatened to prejudice Joubert's rights in Maine. The court dismissed this concern with the reply that "I don't think anything that the Court does here this afternoon can affect Mr. Joubert's rights in the State of Maine."

Joubert was subsequently transferred to Maine where he was arraigned on the murder charge and entered a plea of not guilty. He was tried by a jury and found guilty of Richard Stetson's murder. Joubert was sentenced to life without parole on January 9, 1991. During the pendency of his trial, Joubert filed the present petition in the Superior Court seeking to prevent his return to Nebraska. The court ultimately treated Joubert's petition, which contained several prayers for relief, as a petition contesting extradition pursuant to 15 M.R. S.A. §§ 210 & 210–A (1980 and Supp.1990) and M.R.Crim.P. 85–90. In a decision and order dated December 26, 1990, the court denied Joubert's petition. Joubert then filed a timely notice of appeal that, in accordance with section 210–A, was treated as a request for a certificate of probable cause. Pursuant to M.R.Crim.P. 88(d) the docketing of that appeal constituted an automatic stay of extradition. We granted the certificate of probable cause permitting Joubert to proceed on the appeal that is now before us.

On appeal, Joubert contends that if he is returned to Nebraska under present circumstances "he will be wronged because he will be executed by a state that has lost jurisdiction over him." Moreover, according to Joubert, returning him to Nebraska in accordance with the executive agreement will deprive him of "the full process which he became entitled to when he pleaded not guilty" to the murder charge against him in Maine. Joubert also challenges Maine's right to return him on the grounds that his due process rights would be violated by such an extradition and on the grounds that such removal will violate the prohibition against cruel and unusual punishment in the Maine Constitution.

## I.

■ We do not agree with the State that this case arises pursuant to sections 210 and 210–A of the Extradition Act. Both of those sections clearly speak to the rights of a person who is facing extradition to a receiving state, not of a person awaiting return to the sending state. Characterizing Joubert's petition as one falling under sections 210 and 210–A not only runs contrary to the language of the statute but puts the State in the contradictory position of proclaiming the present inviolability of the executive agreement while at the same time proclaiming the prisoner's statutory ability to challenge the agreement in the receiving state. Because we find these sections of the Extradition Act applicable only to persons awaiting extradition from a sending state, we hold that the court erred in characterizing Joubert's petition as falling under sections 210 and 210–A.

For like reasons, *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1977), is not applicable to the case at bar. Like sections 210 and 210–A, *Doran* addressed only those cases where the prisoner challenged his impending custody in the state *requesting* extradition. Indeed, the Court's language in *Doran* emphasized the concern that "plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art IV, § 2." *Doran*, 439 U.S. at 290, 99 S.Ct. at 536.

As stated below, the relief Joubert seeks is from actions of Maine authorities not Nebraska authorities. Undoubtedly, these issues can be better litigated in Maine than in Nebraska. Because it is clear that Joubert is seeking relief from the actions of Maine authorities, we must treat Joubert's petition as requesting civil relief from impending actions of Maine authorities.

Based on our review of Joubert's claims, however, we conclude that he has stated no cognizable claim for relief.

## II.

■ Joubert argues that the Uniform Criminal Extradition Act and the Interstate Compact on Detainers guarantee him the right to stay in Maine until the "termination of prosecution," which he contends means the end of the appeals process. As a result, he argues, Maine would violate his rights by carrying out the mandate of the executive agreement and returning him within ten days of sentencing. Joubert also appears to argue that, even if he waived his rights under the executive agreement, all of his rights under the Interstate Compact on Detainers were preserved at his pre-extradition hearing in Nebraska.

For purposes of this appeal, we have no need to decide the statutory vehicle by which Joubert was extradited to Maine. Both statutes contain language indicating a preference for quick return of prisoners at the *termination of prosecution.* The relevant language of the Criminal Extradition Act, 15 M.R.S.A. § 205 (1980), states that the extradited person may be returned "to such other state at the expense of this State as soon as the prosecution or imprisonment following conviction in this State is terminated." The language of the Interstate Compact on Detainers, 34–A M.R.S.A. § 9605 (1988), states that its purpose is to "permit prosecution on the charge or charges contained in one or more untried indictments ... which form the basis of the detainer or detainers" and mandates that a prisoner will be returned "[a]t the earliest practicable time consonant with the purposes of this agreement."

Other than the statutory language, the only indications as to the proper meaning of these requirements are cases that indirectly address the issue. Joubert cites *Watson v. Enslow,* 183 Colo. 435, 517 P.2d

1346 (1974), in support of his argument that prosecution terminates at the end of the appellate process. Although *Watson* did speak of the end of prosecution as the end of the appellate process, it is clear the Colorado court was asked only to decide whether the governors violated Watson's right under the Uniform Criminal Extradition Act to be returned as soon as the prosecution is terminated. Because California's request for Watson's return came eight years after the termination of the appellate process, the Supreme Court of Colorado appears to have used termination of the appellate process as a benchmark emphasizing the tardiness of California's extradition request. *Watson* may thus help to define the *outer* time limit of a state's right to demand a prisoner's return. It is not relevant, however, for purposes of Joubert's appeal.

A prisoner's right to stay in the receiving state until "prosecution is terminated," however, remains largely undefined in the cases. Construction of the statute, therefore, must best effectuate the constitutional goals of protecting a prisoner's right to pursue his defense while at the same time respecting the concepts of comity and full faith and credit between the states. *See Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1977). We find these goals are better served by construing the "termination of prosecution" as the entry of judgment after sentencing at the trial court level.

## III.

■ Moreover, both *Watson* and cases decided under the Interstate Compact on Detainers indicate that if the action of the executive interfered with Joubert's substantial rights as to the Maine charges, the remedy, if any, would lie in a challenge to the Maine conviction. *See, e.g., Walker v. King,* 448 F.Supp. 580 (S.D.N.Y.1978). Joubert cites no authority for his argument that he has a right to stay in Maine throughout the entire appellate process.[1]

---

1. For like reasons, Joubert cannot claim that an impending capital sentence in Nebraska re-

quires this court to allow him to stay in Maine until he has completed his appeal. Joubert's

The essence of the declaratory judgment he seeks is a judgment that the agreement between the governors to return him in ten days is illegal. Under the Nebraska and Maine statutes, Joubert could have challenged this agreement only before extradition. The Uniform Criminal Extradition Act specifies that an accused may contest his extradition *at the time he is brought before a magistrate in the sending state.* The Interstate Compact on Detainers actually states that a prisoner waives his right to contest return if he initiates the petition for extradition as Joubert did in 1989. Neither statute provides any other method for contesting the executive agreement. Joubert thus waived his right to contest the executive agreement when he was taken before a judge in Nebraska and waived his right to contest his extradition.

■ Joubert also argues that he should have the right to challenge a future incarceration before it happens if, once it has occurred, he will have no opportunity to make a meaningful challenge. This argument essentially seeks relief similar to the pre-extradition right of habeas corpus permitted a prisoner under the Uniform Criminal Extradition Act. *See* 15 M.R.S.A. § 210 & 210–A. The logic Joubert uses in this regard is rendered unconvincing by the substantive failure of his two challenges. As noted below, Joubert has absolutely no ground to challenge either Nebraska's current jurisdiction over him or Maine's right to return him before he has completed his appeal.

### IV.

■ Joubert's contention that Nebraska has waived jurisdiction is inconsistent with modern case law as well as the language of the Uniform Criminal Extradition Act as enacted in both Maine and Nebraska. Both

15 M.R.S.A. § 227 (1980) and Neb.Rev.Stat. § 29–755 (Reissue 1989) provide that:

> Nothing in this chapter shall be deemed to constitute a waiver by this State of its right, power or privilege to try such demanded person for crime committed within this State, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial sentence or punishment for any crime committed within this State, nor shall any proceedings had under this chapter which result in or fail to result in extradition be deemed a waiver by this State of any of its rights, privileges or jurisdiction in any way whatsoever.

Moreover, numerous cases have held that a State does not lose jurisdiction over a prisoner when it permits extradition to another state pursuant to statutes based on the Uniform Criminal Extradition Act. *See, e.g., State v. White,* 131 Ariz. 228, 639 P.2d 1053 (App.1981); *Dodson v. State,* 497 S.W.2d 767 (Tenn.Cr.App.1973); *Walsh v. State ex rel. Eyman,* 104 Ariz. 202, 450 P.2d 392 (1969).

Joubert cites *State v. Liakas,* 165 Neb. 503, 86 N.W.2d 373 (1957), in support of his argument that, under Nebraska law, Nebraska waived jurisdiction over him when it extradited him to Maine. Joubert's proposition that a court of this state is the proper place to litigate Nebraska law is dubious at best. In the instant situation, we find no reason to entertain a request for relief based on Nebraska law.[2]

### V.

■ Joubert also argues that his return to Nebraska would violate his substantive and procedural due process rights. According to Joubert, there are no Maine or Atlantic reporters in the Nebraska prison libraries and he would therefore be severely prejudiced in his ability to participate in

---

conviction is void *ab initio* and the indictment against him dismissed if he dies before his appeal is resolved. *State v. Carter,* 299 A.2d 891 (Me.1973). If Joubert is executed in Nebraska, there will no longer be a charge against him in Maine, and no cognizable interest to be protected.

**2.** We note, however, that although *Liakas* does have explicit language to the effect that the state loses jurisdiction over a prisoner when it extradites him, it was decided six years before the enactment of the non-waiver clause currently codified in Nebraska Laws at section 29–755. Thus, *Liakas* has been superceded by the language of this non-waiver clause.

the preparation of his appeal if returned there. The United States Supreme Court has guaranteed appellants only meaningful access to the courts, *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977), not absolute access to legal materials. According to the Supreme Court, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498 (emphasis added). Because Joubert has been provided with Maine appellate counsel, his constitutional right of access is fully protected.

## VI.

Finally, we cannot consider Joubert's claim that returning him to Nebraska will violate his rights to be free from cruel and unusual punishment under the Maine Constitution. As the United States Supreme Court has emphasized on numerous occasions, the extradition clause, as well as the notions of full faith and credit and comity do not allow an asylum state to pass upon actions taken by the courts of a sister state. *See, e.g., Michigan v. Doran,* 439 U.S. at 287–288, 99 S.Ct. at 534–535. Review of the actions of Nebraska authorities under the Maine Constitution would clearly violate these constitutional norms.

## VII.

Joubert has requested time to secure a stay of his return to Nebraska from the United States Supreme Court. Until our mandate is entered in the Superior Court, the automatic stay of Rule 88(d) remains in effect. Nevertheless, M.R. Civ.P. 76A(a) will govern the issuance of our mandate because we decide that Joubert's petition is civil in nature. The fourteen day delay in issuance of our mandate is sufficient for Joubert to apply to the Supreme Court for a stay. Accordingly, we decline to grant Joubert an order staying his return beyond the fourteen day delay prescribed in Rule 76A(a).

The entry is:

Remanded with direction to enter the judgment of December 26, 1990 on the civil docket; as so entered the judgment is affirmed.

All concurring.