**Jerry L. JOHNS, Appellant,**

v.

**James BOWLEN, Warden, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 11, 1996.

Permission to Appeal Denied by Supreme Court Dec. 2, 1996.

Philip A. Condra, District Public Defender, Frances W. Pryor, Jr., Asst. Public Defender, Jasper, for Appellant.

Charles W. Burson, Attorney General and Reporter, Amy L. Tarkington, Assistant Attorney General, Criminal Justice Division, Nashville, James Michael Taylor, District Attorney General, Dayton, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Jerry L. Johns, appeals from the order of the Circuit Court of Bledsoe County dismissing his petition for writ of habeas corpus. The appellant is currently serving an effective sentence of seventy-three years pursuant to 1987 Knox County convictions for aggravated kidnapping, assault with intent to commit first degree murder, armed robbery, and reckless driving. He is incarcerated at the Bledsoe County facility of the Tennessee Department of Correction. The appellant contends that his convictions are void, because the State lacked jurisdiction to try him for the offenses committed in Knox County.

After reviewing the record, we affirm the judgment of the trial court.

## BACKGROUND

The record reflects that in March, 1985, in Knox County, the appellant was arrested on numerous charges and placed in the county jail. In July, 1985, the appellant was released on bail. Shortly thereafter, the appellant was arrested in Illinois. The appellant waived extradition to the state of Tennessee and, following the disposition of the Illinois charges, was returned to the Knox County jail. In March, 1986, the state of Texas obtained a fugitive of justice warrant for the appellant, which was served on the appellant in the county jail. The appellant refused to waive extradition to the state of Texas. Accordingly, the state of Texas initiated extradition proceedings. On April 3, 1986, Governor Alexander's extradition officer forwarded the governor's warrant of rendition to the Knox County Sheriff. The governor instructed the sheriff to place the rendition warrant in the appellant's file and to postpone service of the warrant pending disposition of the local charges. On April 25, 1986, the governor's extradition officer

notified the sheriff that the governor was recalling the warrant, because the extradition request had been withdrawn.[1] The record indicates that the Knox County Sheriff's Department returned the warrant to the Governor's extradition officer in Nashville.[2] At the habeas corpus hearing, the appellant claimed that he was served with the rendition warrant on July 18, 1986. The trial court observed that service on July 18, 1986, was unlikely, as the rendition warrant was apparently no longer in Knox County on that date.[3] In any case, in April, 1987, the appellant was tried and convicted of the Knox County offenses.

## ANALYSIS

■ In Tennessee, habeas corpus relief is available only if " 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered,' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." *Archer v. State*, 851 S.W.2d 157, 164 (Tenn.1993) (citation omitted in original). The appellant has the burden of establishing either a void judgment or an illegal confinement by a preponderance of the evidence. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn.Crim.App.1994). If he successfully carries his burden, the appellant is entitled to immediate release. *Id.*

■ The appellant contends that the state of Tennessee lacked jurisdiction in April, 1987, to place him on trial for charges pending in Knox County. The appellant argues that, in April, 1986, the governor of this state, by signing the rendition warrant ordering the appellant's return to Texas, effective-ly waived the State's right to exercise jurisdiction over the appellant. The appellant relies primarily upon our supreme court's decision in *State v. Grosch*, 177 Tenn. 619, 152 S.W.2d 239 (1941).

In *Grosch*, the supreme court held that, when a fugitive from justice faces criminal charges in the asylum state, the asylum state may dispose of those charges before honoring the extradition request of the demanding state. *Id.* 152 S.W.2d at 243. The court further held that the asylum state may nevertheless choose to immediately honor the requisition and surrender the fugitive to the demanding state. *Id.* at 244. This decision rests with the governor. *Id.* See *Yates v. Gilless*, 841 S.W.2d 332, 335 (Tenn.Crim.App. 1992) (if criminal charges are pending in Tennessee, it is solely within the governor's discretion to opt to deliver a fugitive to a demanding state immediately or to delay delivery until after the Tennessee charges are resolved). Finally, the court in *Grosch* observed that "*such surrender* will operate as a waiver of jurisdiction of the asylum state." 152 S.W.2d at 244 (emphasis added); *State v. Bomar*, 211 Tenn. 552, 366 S.W.2d 750, 751 (1963).

■ We conclude that *Grosch* is not controlling. Initially, the Extradition Clause of the United States Constitution sets forth the duty of states to extradite fugitives from justice:

> A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

1. The Uniform Criminal Extradition Act primarily addresses itself to fugitives who are not in custody in the asylum state. Tenn.Code Ann. § 40-9-109. See also *State ex rel. Young v. Rose*, 670 S.W.2d 238, 239 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1984). Because Tennessee chose to dispose of local charges first, it was incumbent upon Texas to institute proceedings under the Interstate Compact on Detainers Act. See Tenn.Code Ann. § 40-31-101 (1990).

2. The records of the Knox County Sheriff's Department, introduced at the hearing, included a copy of the notice by the governor's extradition officer of the warrant's revocation. A handwritten addendum provides: "returned 4-28-86."

3. At the hearing, defense counsel indicated that the attorney who had represented the appellant with respect to the fugitive warrant saw the rendition warrant at the courthouse on July 18, 1986. However, this attorney did not testify at the habeas corpus hearing, nor did defense counsel subsequently include in the record an affidavit by this attorney.

U.S. Const. art. IV, § 2, cl. 2. The Extradition Clause has been implemented by a federal statute, 18 U.S.C. § 3182, and by the Uniform Criminal Extradition Act. *Coungeris v. Sheahan*, 11 F.3d 726, 728 (7th Cir. 1993) (citing *Michigan v. Doran*, 439 U.S. 282, 287–289, 99 S.Ct. 530, 534–536, 58 L.Ed.2d 521 (1978)). The Uniform Criminal Extradition Act, where adopted, governs state extradition proceedings, in conjunction with overriding federal law.[4] *Id. See also Martin v. Sams*, 600 F.Supp. 71, 72 (E.D.Tenn.1984). Tennessee has adopted the uniform act, Tenn.Code Ann. § 40–9–101 to –130 (1990), which specifically provides:

> Nothing in this chapter contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for crime committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this state, *nor shall any proceedings had under this chapter which result in, or fail to result in, extradition be deemed a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever.*

Tenn.Code Ann. § 40–9–130(a) (emphasis added). Moreover, Tenn.Code Ann. § 40–9–130(b) provides that, even when there are criminal proceedings pending against a fugitive in Tennessee, the governor may extradite the fugitive "before the conclusion of such proceedings or his term of sentence in this state" without waiving the jurisdiction of Tennessee in any way. *See Carter v. State*, 600 S.W.2d 750, 752–753 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1980). *See also Matter of Extradition of Dixon*, 487 So.2d 1195, 1197 (Fla.App.1986) (under the Uniform Criminal Extradition Act, surrender of the fugitive to the demanding state does not amount to a waiver of Florida's right to exercise jurisdiction over him in the future).

In other words, under the Extradition Act, the governor of this state *never* waives jurisdiction over the accused by entering into any extradition proceeding.

■ Additionally, as mentioned earlier, the court in *Grosch* held that any waiver occurs only upon the surrender of the fugitive to the demanding state. 152 S.W.2d at 244. In interpreting *Grosch*, we look to this court's opinion in *Elliott v. Johnson*, 816 S.W.2d 332, 339 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1991), in which we held:

> [O]nce [the accused] is brought within the boundaries of this state, absent outrageous or illegal conduct by the arresting authorities so extreme as to shock the conscience, he may be placed upon trial for any charges pending.

In other words, as long as an accused is physically present in Tennessee, absent conduct by state authorities that shocks the conscience, he is subject to this state's jurisdiction.

■ Tenn.Code Ann. § 40–9–117 (1990) provides that the governor may recall a rendition warrant. This section further illustrates that the critical factor in the state's exercise of jurisdiction over a fugitive is the location of the fugitive within the boundaries of the asylum state rather than the issuance or service of the rendition warrant.[5] *See also State v. Smith*, 127 N.E.2d 633, 635 (Ohio App.1953) (under the Uniform Extradition Act, "[a]s long as the fugitive is in the custody of [the asylum state] the Governor may recall his warrant of arrest or issue another one as he deems proper"). In other words,

> If a governor discovers that a [rendition] warrant which has been issued was granted improvidently, the righteous course would seem to be to recall it, to revoke it, provided the person upon whom it operated was still within his domain. It is a license to take and not a contract. It is a privilege to move within the state, and

---

4. *See generally de la Beckwith v. Evatt*, 819 S.W.2d 453, 455–456 (Tenn.Crim.App.1991) (this court described in some detail the extradition process).

5. The arrest of an accused upon the governor's warrant triggers the thirty day time limit, set forth in 18 U.S.C. § 3182, within which the demanding state's agent must collect the accused. *Yates*, 841 S.W.2d at 335. However, we can find no authority for the proposition that this state loses jurisdiction over the accused during those thirty days.

before the border is reached the privilege may be withdrawn.

*Downey v. Schmidt,* 4 F.Supp. 1, 3 (N.D.Texas 1933). *See also State v. Eberstein,* 105 Neb. 833, 182 N.W. 500, 502 (1921) ("[i]t is ... perfectly proper that the power of revocation should remain in the hands of the Governor to be exercised by him at any time before the alleged fugitive is taken from the state"). In the instant case, the record reflects that Governor Alexander, in fact, recalled the rendition warrant while the appellant remained in Tennessee. Thus, the mere issuance of the warrant or even the alleged service of the warrant in no way impaired the right of this state to subsequently place the defendant on trial for his crimes.

Finally, we note that our decision is consistent with the general principle that "[b]y comity the states assist each other in the apprehension of criminals and prevention of crime, and in actions taken to accomplish these purposes the interest of the state is paramount the criminal having no voice, so long as there is no violation of constitutional rights." *Bomar,* 366 S.W.2d at 752.

PEAY and BARKER, JJ., concur.