Hillsborough-northern judicial district
No. 93-022

WAYNE F. CROSS

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

June 27, 1994

*Ropes & Gray*, of Boston, Massachusetts (*Mark P. Szpak* and *John R. Baraniak, Jr.* on the brief, and *Mr. Szpak* orally), for the petitioner.

*Jeffrey R. Howard*, attorney general (*William C. McCallum*, assistant attorney general, on the brief, and *Lucy C. Hodder*, assistant attorney general, orally), for the defendant.

BROCK, C.J.   The petitioner, Wayne F. Cross, appeals from an order of the Superior Court (*Goode*, J.) dismissing his petition for writ of habeas corpus, declaratory judgment, and injunctive relief. He contends that New Hampshire authorities wilfully violated the Interstate Agreement on Detainers (IAD), RSA chapter 606-A (1986), by detaining him in the State during the pendency of his appeal, effectively penalizing him for exercising his right to appeal and violating his rights to due process and equal protection under the State and Federal Constitutions. We affirm.

In late 1982, the petitioner twice robbed the Village Savings Bank in New Ipswich. Hillsborough County authorities subsequently learned that the petitioner was incarcerated at the Massachusetts Correctional Institute in Norfolk, Massachusetts. There, he was participating in alcohol abuse education and a rehabilitation program that included training as an electrician. On November 9, 1983, the petitioner availed himself of the IAD to "request for a final disposition to be made of the indictment" pending against him in New Hampshire regarding the 1982 bank robberies. *See* RSA 606-A:1, art. III(a). He was thereupon transferred to the New Hampshire State Prison; on December 5, 1984, he was convicted on two counts of bank robbery after nearly a year of pretrial and trial delays. After he

was sentenced to two consecutive terms of imprisonment at the New Hampshire State Prison on February 8, 1985, he filed a direct appeal to this court. His convictions were affirmed on December 5, 1986, *State v. Cross*, 128 N.H. 732, 733, 519 A.2d 272, 273 (1986), and he was returned to Massachusetts custody approximately five days later.

In May 1992, upon the imminent completion of his Massachusetts sentence, the petitioner was transported back to the New Hampshire State Prison to serve the remainder of his New Hampshire sentences. He filed a petition for writ of habeas corpus, declaratory judgment, and injunctive relief, alleging that State authorities had wilfully breached the requirements of RSA 606-A:1, art. V(e) by not returning him to Massachusetts custody during the pendency of his direct appeal of his bank robbery convictions to this court. The trial court dismissed his petition and this appeal followed.

■ On an appeal from an order granting a motion to dismiss, we assume the truth of both the facts alleged in the plaintiff's pleadings and all reasonable inferences therefrom as construed most favorably to the plaintiff. If the facts as alleged would constitute a basis for legal relief, the motion to dismiss should be denied. *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985).

All of the petitioner's arguments stem from his claim that State authorities violated RSA 606-A:1, art. V(e). He argues that the IAD expressly requires that a prisoner "must be returned to the sending state at the earliest practicable time following trial," and that the purpose of the IAD, "to ensure a speedy return and thus minimize disruption in the prisoner's program of rehabilitation in the sending state," was "eviscerated" by the violation. Accordingly, we consider whether the State violated the requirements of RSA 606-A:1, art. V(e). RSA 606-A:1, art. V(e) reads: "At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state."

■ "In interpreting a statute, we will ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Appeal of Campton School District*, 138 N.H. 267, 269, 639 A.2d 241, 242 (1994) (quotation and brackets omitted). The usual and common meaning of "practicable" is synonymous with "possible" or "feasible"; the meaning of "consonant" is synonymous with "consistent" or "compatible." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 485, 1780 (unabridged ed. 1961).

We note that the drafters of the IAD did not choose to place a specific time restriction upon the prosecuting authority here as they did in other sections of the statute. *Cf.* RSA 606-A:1, art. III(a), art. IV(c).

While specific provisions of the IAD are intended to encourage the efficient administration of prisoner rehabilitation programs, other purposes of the statute provide for the cooperative administration of the interstate criminal justice system. Article I of the statute reads:

> "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and *the purpose of this agreement* to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. *It is the further purpose of this agreement to provide such cooperative procedures.*"

RSA 606-A:1, art. I (emphasis added).

We have stated that the purpose of the IAD is "to give formal recognition to the practice of honoring detainers filed by other states against prisoners confined in this state and to provide for trial here of persons serving sentences in other states prior to the expiration of their sentences there," *Allen v. Hancock*, 109 N.H. 254, 255, 248 A.2d 632, 632 (1968), and "to secure the speedy trial of persons incarcerated in jurisdictions that enacted similar statutes," *Petition of Lemieux*, 109 N.H. 258, 259, 248 A.2d 634, 635 (1968). *See also Carchman v. Nash*, 473 U.S. 716, 720, 729–32 (1985). In this case, we interpret RSA 606-A:1, art. V(e) to mean that the petitioner shall be returned to Massachusetts at the earliest possible time consistent with the expeditious and orderly disposition of the bank robbery charges against him.

The State argues that the petitioner was not returned to Massachusetts prior to the completion of his appeal because prosecuting authorities were concerned over the adequacy of his waiver of extradition between February 1985 and December 1986. Further, they were concerned that if the petitioner were returned to Massachusetts and if a successful appeal resulted in a new trial, the anti-

shuttling provisions of the IAD, *see* RSA 606-A:1, art. III(d), would effect a dismissal with prejudice. The State concludes that the delay in returning the petitioner to Massachusetts was necessary for the orderly disposition of the bank robbery charges against him. We agree.

On November 9, 1983, the petitioner signed a standard form waiver in connection with his IAD request. The waiver reads, in pertinent part:

> "I hereby agree that this request will operate as a request for *final disposition of all untried indictments*, informations or complaints *on the basis of which detainers have been lodged against me from your state.* I also agree that this request shall be deemed to be my *waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein,* and waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I am now confined."

(Emphasis added.) *See* RSA 606-A:1, art. III(e).

Subsequent to the petitioner's sentencing in February 1985, county authorities informed his counsel that they intended to hold him in the State pending the outcome of his appeal, due to the inadequacy of the waiver. Not until June 1986 did the petitioner, through counsel, indicate his willingness to sign "whatever waivers are required to effect his transfer to Massachusetts." In October 1986, the petitioner moved for his return to Massachusetts; the State objected to the motion absent the petitioner's "specific waiver that he would agree to be returned to the State . . . for trial if [his] appeal . . . results in a new trial being ordered." In December 1986, the petitioner's conviction was affirmed, and he was returned to Massachusetts. His motion was subsequently dismissed as moot.

By its plain language, the signed waiver operated as a waiver of extradition with respect to any proceeding necessary for the final disposition of the untried bank robbery indictment. The petitioner points to RSA 606-A:1, art. V(d), however, and argues that the custody afforded by the IAD expires once an indictment has been "tried." RSA 606-A:1, art. V(d) states, in pertinent part:

> "The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction."

Further, he argues that an indictment has been "tried" either upon completion of the trial itself or upon sentencing; he rejects any suggestion that an indictment is "tried" only upon the completion of post-sentencing appeals.

We need not decide in this case when the "final disposition of an untried indictment" occurs since we find that the State's concern over the petitioner's extradition waiver was justified. Assuming *arguendo* the petitioner is correct that an indictment is "tried" prior to the completion of post-sentencing appeals, then the petitioner's waiver of extradition might have been insufficient in the event of a successful appeal and new trial. Had the petitioner been returned to Massachusetts after his indictment had been "tried," the State would have had to lodge a second detainer against him in order to retrieve him for the second trial. *See Shanks v. Com.*, 574 S.W.2d 688, 690 (Ky. Ct. App. 1978); *State v. Jefferson*, 319 Md. 674, 683–84, 574 A.2d 918, 922 (1990). The State would have been forced to seek a second extradition waiver, which the petitioner might not have signed. *Cf.* RSA 606-A:1, art. IV(d).

Alternatively, assuming *arguendo* that the "final disposition of an untried indictment" includes the completion of all related proceedings, then the anti-shuttling provisions of the IAD might have served to dismiss the indictment had the petitioner been returned to Massachusetts and a new trial ordered. RSA 606-A:1, art. III(d) reads in pertinent part:

> "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

"The firm rules from the foregoing statutes are . . . that return of the prisoner to the custodial sending State works a dismissal of all undisposed charges." *State v. McGann*, 126 N.H. 316, 320–21, 493 A.2d 452, 455–56 (1985). In either case, the State might be deprived of the ability to retry the petitioner on the bank robbery charges. Such a

result would run counter to the purpose of an "orderly disposition" of the charges against the petitioner.

■ Absent the petitioner's specific waiver agreeing to be returned to the State if his appeal resulted in a new trial, we conclude that the State was justified in delaying his return to Massachusetts. The petitioner was returned to Massachusetts at the earliest possible time consistent with the expeditious and orderly disposition of the bank robbery charges against him. Accordingly, we conclude that the State did not violate the requirements of RSA 606-A:1, art. V(e). Further, we reject the petitioner's argument that such a construction of the IAD violates his rights to due process and equal protection under the State and Federal Constitutions. The petitioner was retained in the State not because he exercised his right to appeal, but because he failed to execute a specific waiver. Under the facts of this case, we find no violation of the petitioner's constitutional rights.

*Affirmed.*

THAYER, J., did not sit; the others concurred.