USCA1 Opinion

 

 September 27, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1102 WESTON J. STOW, Plaintiff, Appellant, v. DAVID HORAN, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, U.S. District Judge] ____________________ Before Torruella, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Weston J. Stow on brief pro se. ______________ Jeffrey R. Howard, Attorney General, and William C. McCallum, __________________ _____________________ Assistant Attorney General, on brief for Michael Cunningham appellee. David Horan, Assistant County Attorney, and Peter McDonough, ____________ ________________ Assistant County Attorney, on brief for David Horan and James O'Mara and Hillsborough County. ____________________ ____________________ Per Curiam. Appellant Weston Stow appeals the ___________ district court's grant of summary judgment in appellees' favor. We affirm in part and remand for further proceedings. I. Background __________ We describe the facts in the light most advantageous to Stow. See Nereida-Gonzalez v. Tirado- ___ ________________ _______ Delgado, 990 F.2d 701, 702 (1st Cir. 1993). In September _______ 1990, Stow, who was serving a prison term in Massachusetts, was transported to a county jail in New Hampshire under the Interstate Agreement on Detainers (IAD) to stand trial on charges pending against him in that state.1 He was tried and convicted on those charges in December 1990, and was returned to county jail pending sentencing. On April 1, 1991, James O'Mara, who was superintendent of the county jail, obtained Stow's transfer to the New Hampshire State Prison (NHSP). In a letter to an NHSP official, O'Mara explained that Stow was "facing the longest sentence handed [down] in the history of the Hillsborough County Superior Court for a non-murder case. In addition, inmate Stow is involved in civil litigation with the former Superintendent [, which] presents a minor problem. If inmate Stow were to be injured during a forced move, he could allege that the ____________________ 1. The IAD is codified at N.H. Rev. Stat. Ann. 606-A:1. State prisoners may file section 1983 suits based on alleged violations of the IAD, as codified in state law. See Cuyler ___ ______ v. Adams, 449 U.S. 433, 442, 450 (1981). _____ treatment was a result of this suit. It would be most helpful if this situation could be avoided." Stow was then transferred to NHSP without being given prior notice or a statement of reasons for his transfer. On May 3, 1991, a New Hampshire court sentenced Stow to 40-80 years in prison, to be served consecutive to his Massachusetts sentence. He then appealed his conviction. On June 14, 1991, state prison officials told him to prepare for his return to Massachusetts, but later that day he was told that he would not be returned to Massachusetts. He discovered subsequently that county prosecutor David Horan had instructed prison officials to keep him in New Hampshire. The asserted ground for doing so was apparently the state's concern that, if Stow's appeal were successful, Stow would contest future attempts to return him to New Hampshire for retrial and seek dismissal of the indictment against him under the IAD.2 In July and August, Stow wrote to O'Mara, advising him that he was being illegally detained in New Hampshire and that it was O'Mara's responsibility to have him transported back to Massachusetts after his sentencing. In August and September, Stow submitted several inmate request slips to ____________________ 2. Under what is known as an "anti-shuffling" provision, a prisoner may obtain dismissal of the indictment against him in a receiving state if the state has not tried him on the charges against him before returning him to the sending state. See N.H. Rev. Stat. Ann. 606-A:1, Art. IV(e). ___ -3- NHSP Warden Michael Cunningham, requesting clarification of his situation, and stating that the county attorney had said that Cunningham was responsible for preventing his return to Massachusetts. While these events were unfolding, Stow filed the present actions against O'Mara and Horan, seeking declaratory relief and compensatory and punitive damages under 42 U.S.C. 1983.3 His claims were two-fold, relating first to the state's failure to return him to Massachusetts, and second to his transfer to NHSP from the county jail. Stow alleged that Horan had prevented Stow's return to Massachusetts in June 1991, thereby violating Stow's rights under the IAD and various provisions of the Federal Constitution; that he should have been returned to Massachusetts after he was sentenced on May 3, 1991;4 and that O'Mara had not returned him to Massachusetts despite Stow's requests that he do so. With respect to his second claim, Stow asserted that transferring him to NHSP "without notice, without official ____________________ 3. In his original complaint against Horan, Stow sought injunctive relief as well, but a consolidated complaint omitted that claim. Later, the court denied Stow's separately filed motions for a temporary restraining order and a preliminary and permanent injunction. 4. In his submissions below, Stow argues that he should have been returned either after his conviction in December 1990 or at the latest after he was sentenced. We confine our description of the facts and our analysis to the allegations in Stow's complaint. -4- reason" in itself violated his rights and, moreover, occurred in retaliation for his filing of a civil complaint against county jail administrators and for suggesting that he would file additional complaints if certain alleged constitutional violations continued. In an amended complaint, Stow claimed that a county employee had told him that he had been transferred because he had filed the lawsuit. What is more, Stow averred that he had consistently queried county jail authorities about alleged civil rights violations at the jail, and that he had done so most intensely in the time period immediately preceding his transfer. Later, Stow added Cunningham as a defendant, seeking declaratory relief and damages. Stow alleged that he had informed Cunningham that he was being held at NHSP in violation of the IAD and that he wanted to be returned to Massachusetts, but that Cunningham had refused to act. Subsequently, the parties filed motions for summary judgment.5 The court granted Cunningham's motion. It found that Cunningham had absolute immunity deriving from the common law immunity accorded wardens and others who carry out judicial orders, pointing to a state decision denying Stow habeas relief on the basis of the alleged IAD violation. See ___ Stow v. Horan, 829 F. Supp. 504, 507 (D.N.H. 1993). The ____ _____ ____________________ 5. Cunningham filed a motion to dismiss, which he supplemented by affidavit after the district court directed the parties to submit summary judgment materials. -5- court also granted summary judgment for Horan and O'Mara, determining that Horan had qualified immunity6 and that O'Mara was protected by qualified immunity for the period preceding the state habeas decision and by absolute immunity for the subsequent period. Concluding that New Hampshire law conferred no pre-transfer procedural rights on Stow, the court dismissed Stow's claims relating to his transfer to NHSP. II. Discussion __________ A. Alleged IAD Violations ______________________ Stow claims first that the court erred in finding the defendants to be immune from suit. Since we conclude that all defendants were protected by qualified immunity, we need not address the district court's conclusions, or the parties' arguments, anent absolute immunity. None of the cases cited by Stow held that a receiving state may not keep an IAD prisoner in the state pending resolution of an appeal where the state is concerned that if it returns the prisoner to the sending state and the appeal is successful the prisoner could obtain dismissal of the indictment against him under the IAD. To be sure, some of the case law supports the proposition that Stow could not ____________________ 6. Because it found that Horan had qualified immunity, the court declined to consider Horan's claim of absolute prosecutorial immunity. On appeal, Stow seems mistakenly to believe that the court found that Horan had absolute immunity, and much of his argument addresses that question. -6- have obtained dismissal of the indictment against him if the state had returned him to Massachusetts pending appeal. See, ____ e.g., Joubert v. McKernan, 588 A.2d 748, 751 (Me. 1991) ____ _______ ________ (denying a prisoner's claim that a receiving state was required to retain custody over him pending resolution of his appeal); State v. Jefferson, 574 A.2d 918, 921-22 (Md. 1990) _____ _________ (denying a prisoner's claim that the receiving state had violated the anti-shuffling provision of the IAD by returning him to the sending state pending his "de novo" appeal of his conviction under state statute); Shanks v. Commonwealth, 574 ______ ____________ S.W.2d 688 (Ky. Ct. App. 1978) (denying a prisoner's claim that the receiving state had violated the anti-shuffling provision of the IAD by returning him to the sending state pending his retrial after a mistrial and analogizing that situation to returning a prisoner to the sending state pending appeal of a conviction) (dictum). Nonetheless, those cases do not proscribe what the state did here, or actually hold that an IAD prisoner has the unequivocal right to be returned to the sending state pending appeal. Given the potentially serious consequences of prematurely returning Stow to Massachusetts and the dearth of precedent, we think it is clear that a reasonable state official could decline to rely on those cases -- all of which are from other jurisdictions -- in determining when to return Stow to Massachusetts. -7- Moreover, the IAD itself does not require Stow's return to Massachusetts after his sentencing. Instead, it requires only that a prisoner be returned "[a]t the earliest practicable time consonant with the purposes of this agreement." See N.H. Rev. Stat. Ann. 606-A:1, Art. V(e). On ___ its face, therefore, the IAD establishes no bright-line rules, but anticipates case-by-case evaluations about when it is possible to return an inmate to his sending state. Finally, we note that the New Hampshire Supreme Court has recently held that the state may keep an IAD ___ prisoner in the state pending resolution of his appeal where the state had legitimate concerns that it might not be able to retry him if his appeal were successful. See Cross v. ___ _____ Warden, 644 A.2d 542 (N.H. 1994). ______ Because appellees violated none of Stow's clearly established rights by keeping him in the state pending resolution of his appeal, they are protected from a suit for damages by qualified immunity. See Nereida-Gonzalez, 990 ___ ________________ F.2d at 704. B. Stow's Transfer to NHSP _______________________ Stow accepts the district court's determination that New Hampshire law gave him no right to notice, a statement of reasons for his transfer, or a hearing before being transferred from the county jail to the NHSP. Nevertheless, he asseverates that a Massachusetts prison -8- classification regulation, 103 Code Mass. Regs. 420.04 (1992) (stating that the regulation applies to "all inmates at state, county and federal correctional institutions who are serving a sentence imposed by Massachusetts"), applied to him while he was in New Hampshire because he was serving his Massachusetts sentence while in that state. He claims that that regulation grants him certain pre-transfer procedural rights. Even if Stow's argument that the classification regulation applied to him is correct,7 it avails him naught: the regulation conferred no pre-transfer procedural rights on Stow. Rather, it provides that a classification hearing "shall normally occur before an inmate's transfer." See id. ___ ___ 420.09(2)(a). But "transfer" is defined to be either "[t]he act of moving an inmate from one correctional facility to another correctional facility within Massachusetts upon ______ _____________ approval by the Commissioner or his designee," or an "inmate's movement to an out of state or federal facility." ___ __ _____ Id. 420.06 (emphasis supplied). Furthermore, the term ___ "correctional facility" is defined to mean a "state, county or contract correctional institution located within ______ Massachusetts." Id. (emphasis supplied). Nowhere does the _____________ ___ regulation confer procedural rights on inmates who are ____________________ 7. We do not decide this point, but we note that Stow's argument appears to find support in Good v. Commissioner of ____ _______________ Correction, 629 N.E.2d 1321, 1323-24 (Mass. 1994). __________ -9- transferred intrastate from one correctional facility to another, neither of which is located in Massachusetts. Stow also argues that the district court failed to consider his retaliatory transfer claim. We agree. Accordingly, we remand to the district court to consider that claim under the relevant case law. See, e.g., Ferranti v. ___ ____ ________ Moran, 618 F.2d 888, 891 (1st Cir. 1980); McDonald v. Hall, _____ ________ ____ 610 F.2d 16, 18 (1st Cir. 1979). C. Discovery-Related Issues ________________________ Stow also claims that the district court erred in ruling on certain discovery-related matters. First, he says that the court erred in granting summary judgment since discovery had not been completed. But he did not present this argument to the district court -- indeed, he, himself, moved for brevis disposition -- and the argument is, ______ therefore, waived. See e.g., Ouimette v. Moran, 942 F.2d 1, ___ ____ ________ _____ 12 (1st Cir. 1991). Second, Stow says that the court erred in sustaining O'Mara's objection to a request for the production of documents, thereby depriving Stow of evidence necessary to support his retaliatory transfer claim. Stow asked O'Mara to provide copies of the following: -- any and/or all relevant data, such as other inmates/pre-trial detainees charged with class A Felonies, admittance sheets, records, etc. which would show their name, type of charge and how many dis[c]iplinary reports, or 24 hr lock-ups they rec[ei]ved from the periods of Sept. 07, 1990 and April -10- 01-1991 while being housed at the Hillsborough County jail. [And] -- any and/or all relevant data, such as would be necessary to show which pre-trial detainees/inmates housed at the Hillsborough county jail from the [same periods] were charged with class A Felonies and did not rec[ei]ve any d-reports and/or 24 hr lock-ups and were transferred to the N.H.S.P. Additionally, copies of any transfer papers and that part of their inmate records which apply. O'Mara objected on the ground of burdensomeness, stating that the requests would require him to review and classify approximately 2,200 files and copy each file in its entirety. He pointed out, correctly, that Stow had not offered to pay for the copying. He also said that he would be reluctant to allow Stow to review the files of other prisoners since they were confidential. We find that the lower court did not abuse its discretion in sustaining O'Mara's objections, especially since Stow's requests were overbroad and sought information irrelevant to his claim. Third, Stow claims that the court erred in denying his request to take into account a set of admissions under Fed. R. Civ. P. 36, to which O'Mara did not respond. While such admissions are appropriately considered on summary judgment, see generally United States v. Kasuboski, 834 F.2d ___ _________ ______________ _________ 1345, 1350 (7th Cir. 1987); see also Talley v. United States, ___ ____ ______ _____________ 990 F.2d 695, 697 (1st Cir.) ("Under [Rule] 36(a), the failure to respond to such a request is deemed a binding admission, unless the court later grants leave under [Rule] -11- 36(b) to withdraw the admission."), cert. denied, 114 S. Ct. _____________ 190 (1993), we have already remanded Stow's retaliatory transfer claim, see supra, and we assume that the district ___ _____ court will consider O'Mara's default admissions on remand.8 We note, however, that O'Mara may yet move to permit withdrawal of the admissions. See Fed. R. Civ. P. 36(b). We ___ intimate no opinion on how the district court should treat such a motion if one is forthcoming. III. Conclusion __________ We need go no further. To the extent that Stow advances other claims, none require comment. It suffices to say that we have considered them all, and summarily reject them. We add only that his request for declaratory judgment is moot because he has been returned to Massachusetts, see ___ Preiser v. Newkirk, 422 U.S. 395 (1975), and that the denial _______ _______ of his motion to file a further amended complaint was within the court's discretion, see Foman v. Davis, 371 U.S. 178, 182 ___ _____ _____ (1962) (holding that leave to amend may be denied if the amendment would be futile). Finally, the court did not err in declining to appoint counsel. See Cookish v. Cunningham, ___ _______ __________ 787 F.2d 1, 2 (1st Cir. 1986) (explaining that an indigent litigant has no constitutional right to counsel in a civil ____________________ 8. For clarity's sake, we note that the court need not consider the default admissions relating to O'Mara's alleged duty to return Stow to Massachusetts. Given their ambiguity, the admissions do not alter our conclusion that O'Mara has qualified immunity. See Talley, 990 F.2d at 686. ___ ______ -12- case, but must demonstrate exceptional circumstances to justify the appointment of counsel). Affirmed in part and remanded for further ___________________________________________________ proceedings. ____________ -13-