USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2272 WAYNE F. CROSS, Petitioner, Appellant, v. MICHAEL CUNNINGHAM, WARDEN OF NEW HAMPSHIRE STATE PRISON, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ John R. Baraniak, Jr. with whom Mark P. Szpak, Jill J. Chasson ______________________ ______________ ________________ and Ropes & Gray were on briefs for petitioner. ____________ Patrick E. Donovan, Assistant Attorney General, Criminal Justice __________________ Bureau, with whom Jeffrey R. Howard, Attorney General, was on brief __________________ for respondent. ____________________ June 27, 1996 ____________________ BOUDIN, Circuit Judge. Wayne F. Cross, currently ______________ serving a New Hampshire state sentence for two bank robberies in that state, appeals from an order of the federal district court in New Hampshire dismissing his petition for a writ of habeas corpus under 28 U.S.C. 2254. In the petition, Cross sought to attack the New Hampshire state court convictions on the ground that New Hampshire officials violated the Interstate Agreement on Detainers, N.H. Rev. Stat. Ann.  606-A et seq. ("IAD"), and the Fourteenth Amendment. The _______ facts are as follows.  While Cross was in prison in Massachusetts in November 1983, New Hampshire authorities obtained jurisdiction over Cross pursuant to the IAD to try him for two 1982 bank robberies. Cross had himself requested a rapid disposition of the charges and waived objections to the extradition. Thereafter, Cross was convicted on the bank robbery charges in New Hampshire state court, and in February 1985, was sentenced to two consecutive terms of 7-1/2 to 15 years. He then appealed from the convictions.  At the same time, Cross asked New Hampshire officials to return him to Massachusetts pending resolution of his appeal, citing an IAD provision that says the prisoner should be returned to the sending state "[a]t the earliest practicable time consonant with the purposes of this agreement." N.H. Rev. Stat. Ann. 606-A:1, art. V(e). Cross said that he -2- -2- wanted to go back to the Massachusetts prison to complete an electrician training program that he had been participating in before his rendition to New Hampshire.  But New Hampshire officials were concerned that if Cross was returned to Massachusetts and his New Hampshire appeal resulted in a new trial, the anti-shuttling provision of the IAD might prevent his reprosecution. N.H. Rev. Stat. Ann.  606-A:1, art. III(d). Also, the officials were not certain that Cross' earlier waiver of extradition would cover his return to New Hampshire if a new trial became necessary. As a precaution, they kept him in New Hampshire until his convictions were affirmed on appeal in December 1986, some 22 months after he was sentenced. State v. Cross, 519 A.2d 272 _____ _____ (N.H. 1986). He was then promptly returned to Massachusetts.1 After completing his Massachusetts sentence in 1992, Cross was returned to New Hampshire, where he is currently serving out the bank robbery sentences. It was at this point that Cross filed the instant petition for habeas corpus in the federal district court in New Hampshire.  ____________________ 1Following his conviction, Cross filed a "motion to return" in New Hampshire state court which was dismissed as moot after he was returned to Massachusetts. Prior to the present action, Cross also brought proceedings in the New Hampshire state court collaterally attacking his bank robbery convictions and also filed a habeas petition in the federal district court in Massachusetts; both efforts were unsuccessful. Only the state appeal is reported. Cross v. _____ Warden, 644 A.2d 542 (N.H. 1994). ______  -3- -3- Cross' petition alleged that his convictions on the New Hampshire bank robbery charges must be invalidated--without possibility of retrial--because the state violated the IAD by holding him in New Hampshire pending resolution of his appeal there. In addition to the IAD claim, the petition made two constitutional claims. First, Cross argued that the delay in his return to Massachusetts unconstitutionally burdened his right to appeal, in violation of the Due Process Clause, by forcing him temporarily to forego rehabilitation if he wished to challenge his convictions. Second, Cross claimed that exacting this "extra price" for pursuing an appeal violated the Equal Protection Clause by irrationally treating some convicted defendants differently than others. The district court dismissed the petition, relying upon a report and recommendation by the magistrate judge. The magistrate judge had ruled that, under First Circuit precedent, an IAD-violation claim was not ordinarily a ground for habeas relief. Fasano v. Hall, 615 F.2d 555, 557 (1st ______ ____ Cir. 1980). As for the constitutional claims, the report said that these claims were foreclosed as an abuse of the writ, under Sawyer v. Whitley, 505 U.S. 333 (1992), because ______ _______ they had not been raised by Cross in his prior Massachusetts federal habeas petition. -4- -4- 1. Even assuming arguendo that New Hampshire violated ________ the IAD--a point we need not decide--the district court correctly ruled that this statutory claim is not cognizable under section 2254. Although the IAD is considered federal law for purposes of habeas corpus, Reed v. Farley, 114 S. Ct. ____ ______ 2291, 2296 (1994), nonconstitutional claims can be raised on habeas only if the alleged error results in "a complete miscarriage of justice." Id. at 2300 (citations omitted). ___ Cross cannot meet this substantial burden. The IAD provision at issue here has nothing to do with securing a fair trial, and Cross makes no claim that the alleged IAD violation actually impaired his ability to prepare a defense or to prosecute his appeal. See Fasano, 615 F.2d at 557-58. ___ ______ Moreover, we do not agree with Cross' suggestion that Reed v. Farley undermines Fasano v. Hall. It is true that ____ ______ ______ ____ Reed v. Farley leaves open the possibility that, in unusual ____ ______ circumstances, an IAD violation or any other nonconstitutional violation of federal law might give rise to a claim considered in a habeas proceeding. 114 S. Ct. at 2296-99. But Reed v. Farley declined to consider such claim ____ ______ in circumstances that were arguably more compelling than those presented here, and whatever gap the Supreme Court has left open is too narrow for Cross. Contrary to Cross' suggestion, denying review under section 2254 does not insulate the prompt return provision of -5- -5- the IAD from federal enforcement or extend to prisoners a federal right without a remedy. The IAD, approved by Congress as an interstate compact, comprises federal law for purposes of 42 U.S.C. 1983. E.g., Cuyler v. Adams, 449 ____ ______ _____ U.S. 433 (1981). Cross was free to seek injunctive relief under section 1983, requiring New Hampshire officials to comply with their IAD obligations. Id. See also Stow v. ___ _________ ____ Horan, 36 F.3d 1089 (1st Cir. 1994).  _____ 2. The district court dismissed Cross' constitutional claims as an abuse of the writ, believing that neither of the constitutional claims had been presented in Cross' prior federal habeas proceeding in Massachusetts. See generally _____________ Sawyer, 505 U.S. at 338; Rule 9(b) following 28 U.S.C.  ______ 2254. On this appeal, both sides concede that the due process claim was raised in the prior federal habeas proceeding and so is not foreclosed as a "new" claim. It appears that the equal protection claim was not raised in the Massachusetts habeas proceeding. Cross now offers several arguments (e.g., that he was ____ previously proceeding pro se, that the Massachusetts habeas ___ __ court held no evidentiary hearing) as to why he should be allowed to renew the due process claim in this second habeas proceeding and to make the equal protection claim here even though not previously made in the earlier petition. We need not decide these issues because we are satisfied that the -6- -6- delayed return, whatever its propriety under the IAD, did not violate the Constitution.2 There is no indication that the delayed return comprised an attempt to punish Cross for appealing or to interfere with Cross' appeal from his New Hampshire convictions. Cf. ___ Blackledge v. Perry, 417 U.S. 21 (1974). On the contrary, __________ _____ the aim was to secure Cross' availability for a retrial, if his appeal caused one to be necessary. Whether or not the New Hampshire authorities were overly cautious, their purpose was certainly a legitimate one. The delay may well have interfered with Cross' training program and that is regrettable. But the Constitution does not protect against every incidental burden that may by happenstance result from the decision to appeal. Beauchamp _________ v. Murphy, 37 F.3d 700 (1st Cir. 1994). The likelihood that ______ a delayed return from one prison to another would discourage meritorious appeals is very slight in the generality of cases; more serious burdens were sustained in North Carolina ______________ v. Pearce, 395 U.S. 711 (1969), and in Beauchamp. And, in ______ _________ this case, Cross did pursue his appeal. ___  ____________________ 2It is far from clear that an unconstitutional delay in returning Cross to Massachusetts would permit a habeas court to invalidate an otherwise valid conviction that occurred prior to the delay. Ordinarily, in habeas there must be some causal connection between the legal error and the challenged __________ detention. -7- -7- The equal protection claim made in Cross' brief is the same undue burden claim just discussed--recast by pointing to other defendants who do not suffer the same burden when they choose to appeal (e.g., convicted New Hampshire ____ defendants who were not extradited) and claiming that the discrepant burden on Cross was irrational. Certainly, Cross was treated differently, but that is because his circumstances were different: the rationale for a delay in returning him to Massachusetts does not apply to those who had not been extradited or had been but did not appeal.  Cross' real argument, mislabeled as an equal protection claim, is simply that Cross himself did not need to be kept in New Hampshire because that state could easily have reclaimed him for a new trial had that been required. New Hampshire authorities may have been mistaken in reading the anti-shuttling clause too broadly or too narrowly construing Cross' earlier waiver. But such a fumble is at worst a garden variety administrative error in application and not invidious classification under the Equal Protection Clause. See J. Nowak & R. Rotunda, Constitutional Law 14.2, at 570 ___ __________________ (4th ed. 1991). Affirmed.  ________ -8- -8-