Conwat, Ch. J.
This appeal by relator is taken pursuant to permission granted by our court from an order of the Appellate Division, Fourth Department, which unaMmously affirmed *220 an order of the Wyoming County Court dismissing his writ of habeas corpus and remanding him to the custody of the respondent, Warden of Attica State Prison.
The facts may be stated briefly as follows. On January 31, 1939 the relator was convicted in the Supreme Court, Niagara County, on his plea of guilty, of the crime of murder in the second degree and, thereafter, was sentenced to be confined in Attica State Prison for a term of not less than 20 years nor more than his natural life. Shortly after relator had commenced to serve his sentence, the State of Pennsylvania applied to the Governor of this State for the release of relator for the purpose of answering a charge of murder in the first degree. An agreement was subsequently entered into between the Governors of the States of New York and Pennsylvania which, in substance, provided that relator was to be surrendered to Pennsylvania for the purpose of standing trial there; that if he were acquitted or if he were convicted and given a lesser sentence than that which he was serving in New York, he was to be returned to New York to finish his sentence here; but, that if he were convicted and sentenced to either life imprisonment or execution, he was to be left in the custody of the State of Pennsylvania.
In accordance with the terms of the agreement, relator was released to the Pennsylvania authorities to be tried for murder in the first degree. He entered a plea of guilty and on April 1, 1939 was sentenced to confinement in a Pennsylvania prison for life. Belator was incarcerated in the Pennsylvania prison until April 15, 1954, on which date the Governor of Pennsylvania commuted his sentence to a minimum term of 15 years, 1 month, expiring on May 1, 1954. The Governor’s order also provided that relator was to be returned to New York. In pursuance of that order relator was returned to New York on January 18, 1955, and reincarcerated in Attica State Prison.
The relator’s principal contention in this proceeding is that the Governor of this State waived any further jurisdiction by this State over him and commuted his New York sentence by releasing him to the authorities of Pennsylvania under the above-described agreement with the Governor of Pennsylvania.
This court recently had occasion to say that, ‘ ‘ in aid of the vindication of its respective laws, in the spirit of intergovernmental courtesy and co-operation, it is found expedient that *221 there exist, between and among governments, a reciprocal comity and pact of mutual assistance so that due and orderly procedure may be promoted. In pursuance thereof, a government may and should surrender a person to the jurisdiction of another for the purpose of trial. This should be done within a reasonable time after the date on which the alleged criminal act was committed, instead of waiting for the suspect to complete a prison sentence.” (People ex rel. Rainone v. Murphy, 1 N Y 2d 367, 371.) That being true, it cannot be said that by surrendering the relator to the Pennsylvania authorities to be prosecuted for the crime alleged to have been committed in this State, the Governor effected a waiver of this State’s rights thereafter to require the relator to serve the balance of his New York sentence.
As the relator points out, however, the Governor of New York here went further than merely releasing relator to Pennsylvania for the purpose of standing trial there. The Governor of New York also agreed that if relator were convicted and sentenced to either life imprisonment or execution he was to be left in the custody of Pennsylvania. Since relator was convicted and sentenced to life imprisonment, he was left in the custody of Pennsylvania. Relator insists that the New York Governor’s act of surrender under those circumstances amounted to a commutation of his New York sentence to the time served as of the time he was surrendered to Pennsylvania.
Under section 4 of article IV of the New York State Constitution “ The governor shall have the power to grant reprieves, commutations and pardons after conviction * * * upon such conditions and with such restrictions and limitations, as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons. * * *. He shall annually communicate to the legislature each case of reprieve, commutation or pardon granted, stating the name of the convict, the crime of which he was convicted, the sentence and its date, and the date of the commutation, pardon or reprieve.” That constitutional provision has been implemented in chapter XIII of title XII of part IV of the Code of Criminal Procedure.
A commutation of sentence may be effected by the Governor only by his acting in formal compliance with the terms of section 4 of article IV of the Constitution and the implementing *222 statutes. There is no showing of formal compliance here. Even if it be assumed arguendo that the New York Governor’s action was in the nature of a commutation, it was clearly not an absolute commutation, but, rather, was conditioned upon the relator’s receiving a more severe sentence in Pennsylvania than had been imposed upon him in New York. While it is true that the sentence passed by the Pennsylvania court was.greater than that imposed by the New York Court, the Governor of Pennsylvania commuted the sentence to a minimum of 15 years, 1 month, thereby causing the prisoner’s Pennsylvania sentence to become lesser than his New York sentence. The condition thus occurred whereby relator was to be returned to New York to complete his sentence here. If, therefore, there were any commutation intended, it was nullified by the happening of the given condition. The provisions of the Governors’ agreement clearly indicate that it was not the intention of the New York Governor that relator was to be returned to society until he had at least paid the equivalent of the minimum debt which he owed to the State of New York. We may fairly presume that the Governor of this State foresaw the eventuality that the Governor of Pennsylvania might lessen relator’s Pennsylvania sentence by way of a commutation. In that event, relator was to be returned to New York to complete his sentence here. The mere fact that relator served more than 15 years in a Pennsylvania prison before the condition occurred whereby his Pennsylvania sentence became lesser than that of New York is of no moment. It was conceivable, although not probable, that, after relator had served only one year in the Pennsylvania prison, the Pennsylvania Governor might have commuted his sentence. If the condition were not capable of then operating, as relator asserts, the relator’s New York sentence would have been entirely forgiven and the relator would have been permitted to return to society after the service of only one year for the crimes of murder in the first and second degrees. Certainly, the New York Governor could not have intended a result such as that. It appears, therefore, that the fact that his sentence was not reduced until he had served some 15 years in the Pennsylvania prison is a difference in degree only. Hence, the New York Governor must be deemed to have intended that, whenever the relator’s sentence became less than that imposed in New York, he should be returned to New York *223 to complete Ms sentence here and, so, relator was properly reincarcerated in the New York prison after his return from the Pennsylvania prison.
Relator’s final point is that the Governor of New York, by releasing him to Pennsylvania and suffering him to serve some 15 years in a Pennsylvania prison, could not and did not stop the running of his New York sentence and that, consequently, relator is entitled to receive credit toward the minimum of his New York sentence for the timé spent in the PennsylvaMa prison. With this contention we agree.
In People ex rel. Bainone v. Murphy (supra, p. 373), we pointed out that the running of a prison sentence may be suspended, interrupted, or the length thereof reduced, in but one of three ways, viz., (1) the sentencing Judge may suspend the sentence or the execution of it before imprisonment has begun, but not thereafter; (2) the prisoner himself may interrupt the sentence by escape from prison or by violation of parole, and (3) the Governor may modify the length of the sentence by commutation or pardon. There is no suggestion in this case that the sentencing Judge suspended the sentence before imprisonment and certainly there is no claim that the prisoner himself interrupted the sentence. We have already stated our reasons for holding that the Governor of New York did not reduce the length of the relator’s sentence by surrendering him to the Pennsylvania authorities pursuant to the Governors’ agreement. Accordingly, it must be held that the relator’s New York sentence has been running umnterruptedly since he was incarcerated in Attica State Prison on February 3, 1939 and, under the authority of the Bainone case, the relator must be accorded credit toward the minimum of his New York sentence for all the time spent in the Pennsylvania prison. This does not mean that the writ of habeas corpus is to be sustained, however, for in no event is relator entitled as a matter of right to be discharged from prison at this time. At most, he is a possible subject for parole (Correction Law, § 214).
The order appealed from should be affirmed.
Desmond, Dye, Fuld, Froessel, Van Voorhis and Burke, JJ., concur.
Order affirmed.