OPINION OF THE COURT
Gerald E. Loehr, J.
This is a petition for a writ of habeas corpus. From the papers, it appears that petitioner is presently incarcerated at Sing Sing Correctional Facility having been convicted of assault in the first degree in New York County and sentenced to a determinate term of imprisonment of seven years therefor. Petitioner presently stands charged in the city of Norfolk, Commonwealth of Virginia, with the crimes of first degree murder and use of a firearm in the commission of a felony, alleged to have been committed in Virginia on or about October 23, 2004. The Commonwealth applied to the Governor of this State for the release of the petitioner by way of extradition by executive agreement (CPL 570.12; Va Stat Ann § 19.2-89) for the purpose of answering these charges. An agreement was subsequently entered into between the governors of the states of New York and Virginia which, in substance, provided that the petitioner was to be surrendered to Virginia for the purpose of standing trial there; that if he were acquitted or if he were convicted and given a sentence less than life imprisonment or death, he would be returned to New York to complete his sentence; otherwise, Virginia will retain custody of him. The requisition was signed by the Governor of Virginia on January 17, 2006, and on March 16, 2006, Governor Pataki signed a warrant under the Uniform Criminal Extradition Act (CPL art 570). Pursuant to CPL 570.24, the petitioner was produced and arraigned thereon on March 24, 2006 and the instant petition for a writ of habeas corpus was filed on April 20, 2006.
Petitioner challenges his extradition to Virginia on the grounds that the executive agreement does not comply with CPL 570.12 and Virginia Statutes Annotated § 19.2-89 in that it does not require his return to New York as soon as the prosecution in Virginia is completed under all circumstances. Additionally, petitioner asserts that his return to Virginia should have been sought through the Interstate Agreement on Detainers *983 (CPL art 580) instead of by extradition. Both contentions are without merit.
The US Constitution provides:
“A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.” (US Const, art iy § 2 [2].)
Because the Extradition Clause was thought not to be self-executing, Congress enacted the Extradition Act of 1793 to carry its substance into effect. In its present form, the Extradition Act provides in relevant part:
“Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.” (18 USC § 3182.)
In Kentucky v Dennison (24 How [65 US] 66 [1861]), the Supreme Court held that the Extradition Clause and Act impose on the governors of asylum states a mandatory duty to deliver up fugitives on proper demand. For many years that duty was essentially nothing more than a moral obligation because Dennison also held that the federal courts had no authority to compel extradition. In 1987 the Supreme Court overruled Dennison and held that federal courts have the power to compel extradition (Puerto Rico v Branstad, 483 US 219 [1987]). In the interim, however, the rule had developed that the surrender of a prisoner who is serving a sentence to another state may act as a pardon or commutation of the sentence (see Thompson v Ban- *984 nan, 298 F2d 611 [6th Cir 1962]). As a consequence, and Branstad notwithstanding, the law remained that where the fugitive demanded is incarcerated in the asylum state for a violation of that State’s laws, the governor’s duty to extradite does not mature until punishment in the asylum state has been completed (see State v Robbins, 124 NJ 282, 288, 590 A2d 1133, 1136 [1991]). Be that as it may, it has always been the law that, as a matter of comity, the governor of the asylum state may choose to extradite prisoners who are serving sentences and who “may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it.” (Ponzi v Fessenden, 258 US 254, 260 [1922]; State v Robbins, 124 NJ 282, 288, 590 A2d 1133, 1136 [1991].)
In order to make more uniform the practice and procedure in this area, in 1936 the Uniform Criminal Extradition Act was enacted for adoption by the various states. It was adopted in New York the same year and in Virginia by 1950. Under the Uniform Criminal Extradition Act, a court faced with a challenge to extradition is to do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive (CPL 570.08; People ex rel. Strachan v Colon, 77 NY2d 499, 502 [1991]; People ex rel. Schank v Gerace, 231 AD2d 380, 384-385 [4th Dept 1997]).
Section 5 of the Uniform Criminal Extradition Act provides:
“When it is desired to have returned to this state a person charged in this state with a crime and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.” (See CPL 570.12; Va Stat Ann § 19.2-89.)
Defendant challenges the documents on the basis that the executive agreement between the governors is illegal in that it *985 does not require defendant’s return to New York as soon as the prosecution in Virginia is completed in all circumstances. Defendant misconstrues the purpose of section 5 of the Uniform Criminal Extradition Act.
As indicated above, section 5 was a response to the tension between the duty of the states under the US Constitution to extradite fugitives and the common-law rule that doing so with respect to sentenced fugitives in the asylum state could effectuate an implied pardon. To remedy this, the Uniform Criminal Extradition Act provides that the governor of the asylum state may insist, as a condition for extraditing the prisoner before the completion of his sentence, that the governor of the demanding state agree to return the prisoner to the asylum state as soon as the prosecution is completed. The governor of the asylum state is, however, not required to do so. (People ex rel. Reynolds v Martin, 3 NY2d 217 [1957], cert denied 355 US 885 [1957]; People ex rel. Woloshin v Warden of City Prison, Queens County, 197 Misc 609 [1950]; People ex rel. Gallagher v Hagan, 34 Misc 85 [1901];[1] accord Watson v Enslow, 183 Colo 435, 517 P2d 1346 [1974], cert denied 419 US 880 [1974]; Grayson v Wainwright, 330 So 2d 461 [Fla 1976]; People v Pitsonbarger, 142 Ill 2d 353, 398-399, 568 NE2d 783, 802-803 [1990], cert denied 502 US 871 [1991]; State v Saunders, 288 Mo 640, 232 SW 973 [1921]; State ex rel. Falconer v Eberstein, 105 Neb 833, 182 NW 500 [1921]; Koch v O’Brien, 101 NH 11, 131 A2d 63 [1957]; State v Robbins, 124 NJ 282, 590 A2d 1133 [1991].)
Here, under the agreement, if the petitioner is acquitted or receives less than a life sentence or death, he shall be returned to New York to complete his New York sentence, a condition the Governor is entitled to insist on pursuant to CPL 570.12. In the event the petitioner is convicted and sentenced to life or death, Virginia shall retain custody of him. Under such circumstances, the agreement provides for, effectively, a pardon or commutation of the balance of petitioner’s New York sentence, an act the Governor has the authority to effectuate and over which petitioner has no standing to object (People ex rel. Reynolds v Martin, 3 NY2d 217, 221-222 [1957]; People ex *986 rel. Woloshin v Warden of City Prison, Queens County, 197 Misc 609 [1950]; People ex rel. Gallagher v Hagan, 34 Misc 85 [1901]; accord State v Robbins, 124 NJ 282, 289, 590 A2d 1133, 1136-1137 [1991]).[2] The executive agreement is therefore legal and the documents valid on their face.
Additionally, petitioner argues that Virginia should have sought his return by means of the Interstate Agreement on Detainers (IAD) instead of by extradition. Extradition and IAD are independent legally sufficient methods for securing an out-of-state defendant’s attendance for trial (compare CPL art 570, with CPL art 580) and, as petitioner concedes, Virginia has the option of employing either (CPL 580.10; People ex rel. De Gina v Delaney, 56 AD2d 614 [2d Dept 1977]).
For the foregoing reasons, the petition for a writ of habeas corpus is dismissed.

. Petitioner relies on People ex rel. Bistany v Warden of N.Y. City Prison (24 Misc 2d 330, affd without op 11 AD2d 743 [2d Dept 1960]) for the proposition that the governor cannot waive the provisions of CPL 570.12. This court reads Bistany as only holding that a relator may not be extradited until the governor has had the opportunity to negotiate an agreement under CPL 570.12.

. In the event petitioner is convicted and sentenced to life or death but such sentence is then commuted in Virginia, New York’s right to have the petitioner returned to serve the balance of his sentence is controlled by the governors’ agreement (People ex rel. Reynolds v Martin, 3 NY2d 217, cert denied 355 US 885 [1957]; accord Watson v Enslow, 183 Colo 435, 517 P2d 1346 [1974]). If the petitioner is returned, he is entitled to credit toward his New York sentence for the time he spends in the Virginia prison (People ex rel. Reynolds v Martin, 3 NY2d 217, 223).